# EXHIBIT

# A

UNCLASSIFIED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| KAMILAH WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| National Geospatial-Intelligence Agency, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## DECLARATION OF PATRICIA BAKER-SIMON

I, PATRICIA BAKER-SIMON, do hereby declare and state the following:

1.      I am currently employed by the National Geospatial-Intelligence Agency (NGA), as the Chief, Equal Employment Opportunity Division.   In this capacity, I am the lead NGA employee and supervisor responsible for the processing of EEO complaints filed by NGA employees and applicants.

2.      I am aware that on or about April 11, 2022, plaintiff Kamilah Williams filed a civil complaint in the Circuit Court of Fairfax County, Virginia.   The civil complaint names NGA as a defendant.

3.      In my capacity as the lead officer responsible for the processing of the Agency's EEO complaints, I have access to the EEO records of individuals who have filed complaints.

4.      I have made a diligent search of these records, and I have determined that Kamilah Williams has not filed an EEO complaint.

I declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 21st day of April 2022.

*Patricia A. Baker-Simon*
_____
PATRICIA BAKER-SIMON
Chief, Equal Employment Opportunity
National Geospatial-Intelligence Agency (NGA)

2

# EXHIBIT

# B

UNCLASSIFIED//FOUO

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

KAMILAH WILLIAMS,                           )
                                            )
             Plaintiff,              )
                                            )
    v.                               )
                                            )
NATIONAL GEOSPTATIAL-INTELLIGENCE           )
AGENCY,                                     )
             Defendant.              )
_____      )

## DECLARATION OF JARED N. KAUFMAN

I, JARED N. KAUFMAN, do hereby declare and state the following:

1.      I am currently employed by the National Geospatial-Intelligence Agency (NGA) in its Office of General Counsel (OGC).  My current position is Program and Business Admin. Officer.  One of my ancillary duties is to serve as the intake officer for any administrative claims filed by NGA employees under the Federal Torts Claims Act (FTCA).

2.      I am aware that on or about April 11, 2022, plaintiff Kamilah Williams filed a civil complaint against NGA in the Circuit Court of Fairfax County, Virginia.

3.      In my capacity as the FTCA claims intake officer, I have access to the records of administrative claims filed against NGA.

4.      I have made a diligent search of the records of administrative claims brought against NGA.  This search disclosed no records of any administrative claim submitted to NGA by or on behalf of Kamilah Williams.

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

I declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 19th day of April 2022.

/S/ *Jared Kauffman*
JARED N. KAUFMAN
Business and Program Admin. Officer
NATIONAL GEOSPATIAL-INTELLIGENCE
AGENCY

2

# EXHIBIT

# C

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 8 of 49 PageID# 129

Donovan v. United States Environmental Protection Agency, Not Reported in Fed....

2015 WL 11109494
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Yan DONOVAN, Plaintiff,
v.
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, Defendant.

Case No. 1:15-cv-178
|
Signed 06/26/2015

**Attorneys and Law Firms**

Yan Donovan, Burke, VA, pro se.

Chieko Maria Clarke, US Attorney's Office, Alexandria, VA, for Defendant.

## ORDER

T. S. Ellis, III, United States District Judge

 **\*1** The *pro se* plaintiff in this case, Yan Donovan, has brought suit against the United States Environmental Protection Agency for allegedly coercing her into resigning after her complaints of severe reactions to perfume in the office. Defendant has filed a motion to dismiss on the ground of lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed. R. Civ. P., as well as on the ground of plaintiff's failure to state a claim, pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the reasons that follow, defendant's motion must be granted.

## I.

The relevant facts are taken, as required on a motion to dismiss, from plaintiff's allegations in her complaint. *See Covey v. Assessor of Ohio County*, 777 F.3d 186, 192 (4th Cir. 2015) ("[W]e accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.") (internal quotation marks and citations omitted).

The plaintiff, Yan Donovan, joined the United States Environmental Protection Agency ("EPA") in 1998 as a chemist, GS-1320-11, in the Office of Pesticide Programs, Health Effects Division in Washington, D.C. Plaintiff worked for the EPA for 13 years during which she received a number of awards, including the EPA Bronze medal for Commendable Service, the Quality Step Increase, and the Honor Award for Excellence. A few years ago, plaintiff developed a medical condition known as perfume sensitivity. When an individual with perfume sensitivity is exposed to certain types of perfume and body fragrance, that individual can have severe reactions such as trouble breathing, cloudiness in the brain, and other side effects.

In the beginning of 2011, plaintiff suffered severe reactions to the fragrance used by a co-worker near her office cube. Plaintiff approached the co-worker about her issues, but the coworker simply told plaintiff to wear a mask. Subsequently, plaintiff obtained a letter from her family doctor outlining plaintiff's medical condition and submitted this letter to her then-supervisor, Mary Manibusan. After discussions with the "parties involved," [1] no action was taken to resolve plaintiff's issues. Plaintiff's condition continued to deteriorate and by the summer of 2011, plaintiff had to bring most of her work home to work at night in a perfume-free environment. This nocturnal work schedule took its toll on plaintiff to the point where plaintiff informed her supervisor that she needed to take some time off.

[1]     *See* Plaintiff's Affidavit.

After exploring her options, plaintiff was recommended to take the approach of "resign with re-instatement eligibility." [2] This option, according to the administrative staff at the EPA, would guarantee that plaintiff would be re-instated at the grade and step level that she had obtained before resigning whenever plaintiff was ready to return to work. Plaintiff thus signed a resignation letter on September 8, 2011. In relevant part, this latter states:

> To whom this may concern: After careful consideration, I have decided to voluntary[ily] resign from my current job at the Office of Pesticide Program[s], OPP/OCSPP/EPA, to spend more time with the family. My last date serving the Agency will be October 8, 2011. I have enjoyed my

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 9 of 49 PageID# 130

Donovan v. United States Environmental Protection Agency, Not Reported in Fed....

time here with [the] EPA and wish the
continuing success of the Agency. [3]

2      *Id.*

3      Plaintiff's Complaint, Ex. 5. It is appropriate to
       take judicial notice of this document because in
       accordance with *Zak v. Chelsea Therapeutics Int'l,
       Ltd.,* 780 F.3d 597 (4th Cir. 2015), this document
       is "integral to and explicitly relied on in the
       complaint" and plaintiff does "not challenge [the
       document's] authenticity." *Id.* at 606-07 (internal
       quotation marks and citations omitted).

**\*2** One year later, plaintiff contacted the Office of Pesticide
Programs managers—Manibusan and Jack Housenger—
about returning to the EPA. According to plaintiff, the "story
had changed"[4] and plaintiff was informed that she had
to apply through Agency openings in order to regain her
position. Plaintiff applied to any Agency openings available
for the next two years but the "re-instatement eligibility"[5]
was not honored by the EPA. Plaintiff finally scheduled a
meeting with the Office of Pesticide Programs manager Rick
Keigwin along with staff members Karen Jones and Tabitha
Codrington in December 2014. Mr. Keigwin composed an
email recording the minutes of this meeting; in relevant part,
this email stated:

> [S]ince you had worked for the
> federal government and acquired
> career tenure by completing 3
> years of federal service before you
> voluntarily resigned your position,
> your reinstatement eligibility is <u>not</u>
> limited to 3 years from the time
> of your resignation (October 8,
> 2011). Rather, because of your
> length of federal service prior to
> your voluntary resignation, there is
> no limitation on your reinstatement
> eligibility. However, as we also
> discussed, eligibility for reinstatement
> is <u>not a guarantee</u> of future federal
> employment. [6]

The email then discussed possible pathways for plaintiff to
reenter the federal workforce and further stated that Ms.
Codrington would be available to assist plaintiff with the
application process for available positions at the EPA.

4      Plaintiff's Affidavit.

5      *Id.*

6      Plaintiff's Complaint, Ex. 4. Like Exhibit 5, this
       document is attached to plaintiff's complaint and
       thus it is "integral to and explicitly relied on in the
       complaint" making it appropriate to take judicial
       notice of this document as well. *Zak,* 780 F.3d at
       606-07.

Plaintiff filed the present lawsuit on February 9, 2015.
Plaintiff alleges that her resignation letter was coerced
because she was about to enter the "empty nest" phase of her
life in 2011, with her two children both leaving for college.
Thus, plaintiff argues that her resignation letter was invalid
since the rationale for her resignation was to spend time with
family when in reality, the bulk of her family was imminently
set to leave the house permanently. Moreover, plaintiff alleges
that a more pressing concern for her would have been paying
for her children's college tuitions, another reason plaintiff
argues that her resignation letter was involuntary. In addition,
plaintiff alleges that she was definitely "NOT in a sound
mental state" when she signed her resignation letter because
she cannot remember whether September 8, 2011 was a
Monday or a Friday. [7] Finally, plaintiff alleges that her five-
line resignation letter was simply an "easy way" for defendant
to handle her request for time off due to a medical condition
that was not well-known or accepted at the time. [8]

7      Plaintiff's Affidavit.

8      *Id.*

Plaintiff's complaint alleges that the EPA engaged in
deliberate deceit, fraud, breaches of good faith and fair
dealing, and medical and health discrimination. Additionally,
plaintiff's complaint demands that the EPA invalidate the
September 8, 2011 resignation letter and re-instate plaintiff at
the grade and step level she was verbally promised prior to
her resignation. Plaintiff's complaint further demands that she
be credited for all the missing years she was not working for
the EPA, that the EPA pay plaintiff no less than $300,000 in

Case 1:22-cv-00434-PTG-JFA Document 9-1 Filed 05/06/22 Page 10 of 49 PageID# 131

Donovan v. United States Environmental Protection Agency, Not Reported in Fed....

emotional damages, and that the EPA issue a formal written apology to plaintiff.

On May 18, 2015, defendant filed a motion to dismiss with the requisite *Roseboro* notice. [9] On May 29, 2015, plaintiff filed a rebuttal to defendant's motion to dismiss. Oral argument on defendant's motion was heard on June 26, 2015. During the course of oral argument, plaintiff indicated that she had not exhausted her required administrative remedies because a union representative had refused to help her with her claims once she was no longer a federal employee. The parties proceeded to argue the remainder of defendant's motion, and as such, it is now ripe for disposition.

[9]     *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## II.

**\*3** When a "challenge under Rule 12(b)(1) is raised to the asserted basis for subject matter jurisdiction, the burden of proving the asserted basis for jurisdiction falls on the plaintiff." *Melendez v. Sebelius*, No. 14-1909, 2015 WL 2343797 at \*1 (4th Cir. May 18, 2015). In "determining whether jurisdiction exists, the district court is to regard the allegations in the complaint as 'mere evidence' and may consider evidence outside the pleadings without converting the motion into one for summary judgment." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). A court should "grant a Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal quotation marks and citations omitted).

Here, plaintiff's claims must be dismissed for lack of subject matter jurisdiction because to the extent she has any claims arising out of her federal employment relationship, they must be brought pursuant to the Civil Service Reform Act of 1978 ("CSRA"). The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 132 S.Ct. 2126, 2130 (2012). Thus, when an "employing agency proposes a covered action against a covered employee, the CSRA gives the employee the right to notice, representation by counsel, an opportunity to respond, and a written, reasoned decision from the agency." *Id.* If the "agency takes final adverse action against the employee, the CSRA gives the employee the right to a hearing and to be represented by an attorney or other

representative before the Merit Systems Protection Board (MSPB)." *Id.* And finally, an "employee who is dissatisfied with the MSPB's decision is entitled to judicial review in the United States Court of Appeals for the Federal Circuit." *Id.* The "Federal Circuit has exclusive jurisdiction over appeals from a final decision of the MSPB." *Id.* (internal quotation marks and citations omitted). In *Elgin*, the Supreme Court concluded that "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernable that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 2134. [10] Here, plaintiff's complaint contains no allegations that she raised her claims before the MSPB, and plaintiff complains of an "involuntary resignation or retirement" which is a covered action under the CSRA. 5 C.F.R. § 1201.3(a)(1). Plaintiff's statement that she called a union representative and received no assistance because she was no longer a federal employee is plainly insufficient to constitute formal exhaustion of her claims before the MSPB. Accordingly, plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.

[10]     *See also Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000) ("[W]e hold that Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship."); *Mann v. Haigh*, 120 F.3d 34, 38 (4th Cir. 1997) ("[I]n view of the comprehensiveness of the CSRA as interpreted by the Supreme Court ... the CSRA prevents ... employees from obtaining judicial review of an adverse employment decision under the APA (Administrative Procedure Act)"); *Nguyen v. U.S. Dep't of Defense*, 39 F.3d 1178, 1994 WL 582642 at \*1 (4th Cir. 1994) ("We conclude that [plaintiff's] tort claims, which stem from his federal employment, are barred by the exclusive, preemptive nature of his CSRA remedies.").

**\*4** The only exception to the MSPB and Federal Circuit's exclusive jurisdiction over claims arising from a federal employment relationship occurs when an employee "alleges that a basis for the action was discrimination prohibited by enumerated federal employment laws." *Elgin*, 132 S.Ct. at 2134. In such a situation, "the CSRA allows the employee to obtain judicial review of an unfavorable MSPB decision by filing a civil action as provided by the applicable employment law." *Id.* Plaintiff's complaint does allege "medical and

Case 1:22-cv-00434-PTG-JFA  Document 9-1  Filed 05/06/22  Page 11 of 49 PageID# 132

Donovan v. United States Environmental Protection Agency, Not Reported in Fed....

health discrimination"; importantly, however, these claims must be dismissed because although discrimination claims arising out of a party's federal employment relationship may eventually be raised in federal district court, a prerequisite for raising these claims in district court is the exhaustion of applicable administrative remedies. Where, as here, a plaintiff alleges discrimination as forming part of the basis of a claim arising out a federal employment relationship, a plaintiff has two choices: (i) exhaust administrative remedies with "the agency EEO[C], planning to appeal any unfavorable decision to the MSPB" or alternatively, (ii) "appeal the [executive] agency's action directly to the MSPB." *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998); *see also Butler v. West*, 164 F.3d 634, 638 n. 6 (D.C. Cir. 1999) ("[W]hen a federal employee claims he or she has been affected by both an adverse employment action and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the MSPB."). Plaintiff's complaint is devoid of any allegations that she pursued either avenue of exhaustion; she does not allege that she filed a complaint with the EEOC or that she raised her discrimination claims in front of the MSPB. And her statement at oral argument that she called a union representative is similarly insufficient to exhaust; in order to have properly exhausted her administrative remedies,

plaintiff must have filed, in writing, a complaint with either the MSPB or EEOC. As such, plaintiff's discrimination claims must also be dismissed for lack of subject matter jurisdiction. In view of the result reached here, it is unnecessary to reach or decide defendant's arguments based on Rule 12(b)(6), Fed. R. Civ. P.

Accordingly, for the reasons stated herein and from the bench, it is hereby **ORDERED** that defendant's motion to dismiss is **GRANTED** for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.

Should the *pro se* plaintiff wish to appeal this Order granting defendant's motion to dismiss, she must file a notice of appeal within 60 days of the entry of this Order pursuant to Rules 3 and 4, Fed. R. App. P.

The Clerk is directed to send a copy of this Order to the *pro se* plaintiff and all counsel of record, and to place this matter among the ended causes.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 11109494

---

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 3760134

Only the Westlaw citation is currently available.

United States District Court, E.D. Virginia,
Alexandria Division.

Raquel GORDON, Plaintiff,

v.

Carlos GUTIERREZ, et al., Defendants.

No. 1:06cv861.
|
Dec. 14, 2006.

**Attorneys and Law Firms**

Raquel Y. Gordon, Bryans Road, MD, pro se.

Larry Lee Gregg, United States Attorney's Office,
Alexandria, VA, for Defendants.

### ORDER

T.S. ELLIS, III, United States District Judge.

**\*1** Plaintiff Raquel Gordon, proceeding *pro se,*[1] alleges twenty four causes of action arising out of her employment with, and termination from, the United States Patent and Trademark Office ("USPTO"). She alleges she was discriminated against on the basis of race, color, and sex, and in retaliation for having filed a formal complaint with the Equal Employment Opportunity Commission, as well as subjected to a hostile work environment, all in violation of Title VII, 42 U.S.C. § 2000e *et seq.* For good measure, plaintiff also alleges she was subjected to retaliation for protected whistleblower activities, and various and sundry common law torts, including violations of privacy,[2] deceit, misrepresentation, libel, slander, tortious interference with contract, negligent and intentional infliction of emotional distress, negligence, and abuse of process. The named defendants are Secretary of Commerce Carlos Gutierrez in his official capacity, and four USPTO employees who are plaintiff's former supervisors: Howard Goldberg, Margaret Focarino, Nancy Le, and John Barlow, in their individual capacities.

[1]   Plaintiff represents that she is an attorney, a law school graduate, and a member a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* litigants. *See e.g. Smith v. Plati,* 258 F.3d 1167, 1174 n. 6 (10th Cir.2001); *Olivares v. Martin,* 555 F.2d 1192, 1194 n. 1 (5th Cir.1977); *Grossman v. Motley,* 1987 WL 15268 at *2 n. 1 (E.D.N.Y.1987).

[2]   It is unclear from the complaint and moving papers whether plaintiff asserts violations of the Privacy Act, 5 U.S.C. § 552a, or one or more of the four common law privacy torts. *See Restatement (Second) of Torts,* § 652A(2) (recognizing four invasion of privacy torts: intrusion upon seclusion, appropriation of a name or likeness, unreasonable publicity, and false light). The analysis proceeds on the assumption that she seeks to assert both the statutory and common law claims. In any event, as discussed *infra* in Sections II and III, both types of claims fail because they arise out of plaintiff's federal employment are preempted by the Civil Service Reform Act.

Now ripe for disposition is a motion by the United States pursuant to Rule 12(b)(1) and 12(b)(6), Fed.. R. Civ. P., (i) to dismiss all claims against the individual defendants, (ii) to dismiss for lack of subject matter jurisdiction all claims against the official defendant except the Title VII claim, and (iii) to dismiss all Title VII claims except those relating to plaintiff's treatment by John Barlow. For the reasons that follow, the motion must be granted.

### I. Facts[3]

[3]   The facts stated herein are derived from the complaint and presumed to be true, as is appropriate when considering a motion to dismiss. *Westmoreland v. Brown,* 883 F.Supp. 67, 70 (E.D.Va.1995).

Plaintiff, who is African-American, was employed as a patent examiner in the USPTO at all times pertinent here until she was terminated July 13, 2005. The discrimination she complains of allegedly began in 1997, when she developed a social relationship with Nancy Le, then her supervisor. In 1998, after the two became friends, Ms. Le repeatedly pestered plaintiff to have sex with Ms. Le's husband. Ms. Le's husband allegedly made similar requests to plaintiff via telephone. When plaintiff refused these solicitations, Ms. Le began reviewing her work at the USPTO negatively

and generally treating her differently from other patent examiners. This alleged disparate treatment included (i) negative reviews, (ii) sending plaintiff on time-consuming "wild goose chases," (iii) delayed pay grade increases, and (iv) denial of training opportunities made available to others.

Plaintiff reported Le's inappropriate and unwelcome sexual advances to defendant Focarino and requested a transfer to another supervisor. This request was granted and, in October 1998, she was transferred to a new supervisor, Ben Fuller, who was eventually replaced by defendant John Barlow. Shortly thereafter, Barlow allegedly also began treating her in a discriminatory fashion. More specifically, she alleges Barlow undermined plaintiff's production and denied her opportunities for advancement that were made available to more junior examiners who were white and/or male. She also alleges that Barlow subjected her to disparate treatment by (i) assigning plaintiff cases outside of her area of expertise, (ii) removing cases from plaintiff's docket to lessen her opportunities for advancement, (iii) precluding plaintiff from "classifying" applications (a process that helped determine to whom they were assigned) or permitting her to classify only on terms substantially different from her junior white male co-workers, (iv) maintaining a "secret docket" of cases on which plaintiff was not permitted to work, (v) reviewing her work improperly, (vi) unfairly singling her out for disciplinary counseling, and (vii) granting her lower bonuses and giving her less favorable evaluations than those given to similarly situated white males. Plaintiff contends that Barlow's disparate treatment of her was fueled in part by Le's animosity towards plaintiff. She allegedly discussed Barlow's and Le's treatment of her with Focarino and Goldberg, her second level supervisors.

 **2** Plaintiff contacted an EEO counselor on March 16, 2001, and thereafter, on May 25, 2001, she filed a complaint with the Equal Employment Opportunity Commission complaining of the conduct alleged here. The administrative law judge granted summary judgment for the government,[4] and plaintiff now seeks *de novo* review.

4     Plaintiff does not allege she received a right to sue letter as a result of this adverse determination, and no such letter appears in the current record.

As a result of these facts, plaintiff alleges she was discriminated against on the basis of race, color, sex, and in retaliation for having filed a formal Equal Employment Opportunity administrative complaint. She also asserts

numerous causes of action under the Federal Tort Claims Act[5] ("FTCA"), and other federal statutes.

5     28 U.S.C. §§ 1346, 1402, 2401-02, 2411-12, 2671 *et seq.*

## II.

The standard for disposition of a dismissal motion is well settled: A motion to dismiss may be granted only if it is evident that plaintiff can prove no set of facts entitling her to relief, assuming the facts pled in the complaint are true and drawing all reasonable inferences in plaintiff's favor. *Westmoreland v. Brown,* 883 F.Supp. 67, 70 (E.D.Va.1995).

The government first moves to dismiss all actions against the individual defendants,[6] arguing that a federal employee may not sue her supervisors in their individual capacities based on claims arising out of her employment. This argument is well taken.

6     Because the complaint fails to specify which claims are asserted against which defendants, the analysis necessarily proceeds on the assumption that all claims are asserted against all defendants.

First, plaintiff's tort claims against the individual defendants, while styled as FTCA violations, fail to state a valid claim under that statute. The FTCA provides that the United States is the proper defendant when suing for injuries resulting from the negligence of federal employees on the job. Specifically, the FTCA states that

the remedy against the United States [under the FTCA] for injury or loss of property ... resulting from the negligent or wrongful act or omission of a government employee while acting within the scope of employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim.

28 U.S.C. § 2679(b). In other words, when the FTCA waives sovereign immunity with respect to a particular claim, the United States is the sole proper defendant and no action lies against individual employees. Therefore, the FTCA negligence claims against the individual defendants must be dismissed.

The remaining intentional tort claims merit the same fate. The FTCA's "intentional tort exception" provides that sovereign immunity is not waived for, *inter alia,* claims of abuse of process, libel, slander, misrepresentation, deceit, or tortious interference with contract, all of which plaintiff asserts. 28 U.S.C. § 2680(h). Thus, these intentional tort claims may not proceed against the sovereign. Nor may they proceed against the individual defendants. Because these claims arise out of plaintiff's employment, they fail as a matter of law whether labeled as FTCA or common law because the Civil Service Reform Act [7] ("CSRA") "provides the exclusive remedy for employment-related tort claims [of a federal employee]." *Brown v.. Hicks,* 929 F.Supp. 1184, 1189 (E.D.Ark.1996). [8] *See also Brown v. Hicks, supra; Hall v. Clinton,* 235 F.3d 202, 206 (4th Cir.2000) (CSRA precludes both *Bivens* actions and statutory claims arising out of federal employment relationship); *Ferris v. American Federation of Government Employees,* 98 F.Supp.2d 64, 68 (D.Me.2000) (CSRA preempts state common law claims against individual federal employees for, *inter alia,* intentional infliction of emotional distress, defamation, and tortious interference with contract). Moreover, these causes of action are preempted even if the CSRA remedies are more limited than the remedies that would otherwise be available under a more general statutory scheme. *See Orsay v. U.S. Dep't. of Justice,* 289 F.3d 1125, 1128 (9th Cir.2002). Thus, since plaintiff's FTCA or common law intentional tort claims arise entirely out of her employment at the USPTO, they must be dismissed, both as against the individual and the official defendants. [9] *Accord Nguyen v. U.S. Dep't of Defense,* 39 F.3d 1178 (4th Cir.1994) (a plaintiff may not "avoid the CSRA by cloaking his lawsuit in the guise of an FTCA action") (internal citations omitted).

[7]    5 U.S.C. § 1201 *et seq.*

[8]    This is also a sufficient reason to dismiss the negligence claims against the individual defendants, in addition to the fact that they are barred by the FTCA.

[9]
Even were they not preempted by the CSRA, plaintiff's FTCA claims against the United States must be dismissed because plaintiff did not exhaust her administrative remedies and because at least some of the claims are time-barred. Any FTCA claims not covered by the CSRA must be presented to the PTO, which then has 6 months to consider them. 28 U.S.C. § 2675(a) ("an action against the United States shall not be instituted unless claimant shall have first presented the claim to the appropriate agency and his claim shall have been finally denied by the agency in writing."). There is no allegation that any of plaintiff's FTCA claims were presented as such to the USPTO for exhaustion. Moreover, many of plaintiff's claims are likely time-barred. Some of the claims may have accrued as early as 1998, while some may have accrued as late as 2005. Therefore, some of the claims are likely untimely, as tort claims against the U.S. are barred unless presented to agency within two years after the claim accrues, or unless action is begun within six months of notice of final denial of claim by agency. *See* 28 U.S .C. § 2401(b). This time limit is jurisdictional, and though it is subject to equitable tolling, *Schmidt v. United States,* 498 U.S. 1077 (1991), *vacating* 901 F.2d 680 (8th Cir.1990), *on remand* 933 F.2d 639 (8th Cir.1991), plaintiff has alleged no factual basis to establish equitable tolling, and the failure to do so defeats any claim for equitable tolling. *See infra* note 9. Since no basis for a tort claim other than plaintiff's employment has been alleged, however, all the tort claims are preempted by the CRSA, and there is no need to decide precisely which ones are untimely or unexhausted.

**\*3** The CSRA, however, does not preempt claims arising under Title VII or the Equal Pay Act ("EPA"). 5 U.S.C. § 2302(d)(1) (Title VII); § 2302(d)(3) (Equal Pay Act). *See also Wilson v. Harvey,* 156 Fed. Appx. 55 n. 4 (10th Cir.2005) (citing cases). Nonetheless, the Title VII claims against the individual defendants must be dismissed, as it is well-settled law that individual federal employees are not amenable to suit under Title VII. *See e.g. Campbell v. Dep't of Navy,* 894 F.2d 401 (table), 1990 WL 2203 (4th Cir.1990) (stating that the "head of the department is the proper defendant" under § 2000e-16); *Stoll v. Principi,* 449 F.3d 263, 265 n. 2 (1st Cir.2006); *Nichols v. Agency For Int'l Development,* 18 F.Supp.2d 1, 3 (D.D.C.1998) ("the only proper defendant in a Title VII suit ... is the head of the department, agency, or

unit in which the allegedly discriminatory acts transpired") (citing *Hackley v. Roudebush,* 520 F.2d 108, 115 n. 17 (D.C.Cir.1975)) (internal quotation marks omitted); *King v. Dalton,* 895 F.Supp. 831, 844 (E.D.Va.1995) (citing other cases). Only defendant Gutierrez is a proper defendant with respect to the Title VII claims.

Plaintiff's EPA claim must also be dismissed. The government asserts that plaintiff's EPA claim may also only be brought against defendant Gutierrez in his official capacity, and while relevant precedent and statutory text suggest otherwise, [10] this question need not be resolved because the instant EPA claim is untimely. The EPA has a 3 year statute of limitations for willful violations and a 2 year statute of limitations for other violations. 29 U.S.C. § 255(a). The government contends, and plaintiff has not contested, that plaintiff's EPA claim accrued in 2001. This suit was filed in 2005. Hence, plaintiff's EPA claim is time-barred. [11]

[10]     The Fair Labor Standards Act (of which the EPA is a component) provides that "any employer who violates the provisions of section 206 shall be liable to the employee affected" and that "an action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any federal or state court of competent jurisdiction ...". Thus, liability attaches only for "employers" who violate the EPA. The statute further defines "employers" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee ." 29 U.S.C. § 203(d). While this language specifically includes agencies as employers, it does not explicitly exclude agency heads or mid-level supervisors as "employers." Indeed, the breadth of § 203(d) suggests that individual defendants may be amenable to suit, depending on the facts of each case and the degree of each individual defendant's responsibilities and authority. Decisional law has also held open the possibility of Equal Pay Act suits against individual federal employees. *See Weiss v. Marsh,* 543 F.Supp. 1115, 1118 (M.D.Ala.1981) (individual Army employees may be proper defendants in Equal Pay Act suit); *Mirza v. Dep't of Treasury by and through Bentsen,* 1994 WL 30551 (N.D.Ill.1994) (Treasury officials).

[11]     Plaintiff conclusorily asserts she is entitled to equitable tolling of any applicable statute of limitations. Because she has not alleged a factual basis for equitable tolling, she is not entitled to it. *See Kokotis v. U.S. Postal Service,* 223 F.3d 275, 280-81 (4th Cir.2000) (equitable tolling inappropriate where claimant fails to exercise due diligence to preserve rights or fails to allege defendant deceived or misled plaintiff about existence of cause of action); *Williams v. Giant Food,* 370 F.3d 423, 430 n. 4 (2004) (same); 51 *Am.Jur.2d Limitations of Actions* § 175 ("a plaintiff seeking equitable tolling of a statute of limitations must set forth in the complaint particularized allegations that the defendant actively misled the plaintiff, or must show that he or she exercised reasonable diligence in investigating and bringing her claims.").

Plaintiff's Privacy Act claims against the individual defendants must also be dismissed. The text of the Privacy Act authorizes suit against the offending agency, not against individual federal employees. [12] Moreover, courts have consistently declined to imply a *Bivens*-style right of action against individual officers for conduct that would be actionable under the Privacy Act. *See Patterson v. FBI,* 705 F.Supp. 1033, 1045 n. 16 (D.N.J.1989), *aff'd* 893 F.2d 595 (3rd Cir.), *cert. denied,* 498 U.S. 812 (1990); *Downie v. City of Middleburg Heights,* 301 F.3d 688, 698 (6th Cir.2002); *Williams v. Dept. of Veterans Affairs,* 879 F.Supp. 578, 585-88 (E.D.Va.1995) (*dictum* ) (citing cases). No reason has been presented here to depart from this sensible line of authority. Accordingly, the Privacy Act claim against the individual defendants must be dismissed.

[12]     Specifically, the relevant provision of the Privacy Act creating a private cause of action, 5 U.S.C. § 552a(g)(1)(C), provides that "whenever an agency fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual, *the individual may bring a civil action against the agency.*" (emphasis added).

In sum, all Title VII, EPA, FTCA, and Privacy Act claims against the individual defendants must be dismissed.

## III.

The analysis now moves to claims against the official defendant, Gutierrez. The government seeks dismissal of all claims against the official defendant except the Title VII claims. To reiterate, the claims analyzed here are those asserting: (i) EPA violations, (ii) various tort claims, (iii) violations of plaintiff's privacy rights, and (iv) retaliation for whistleblower activities. [13]

> [13] Also, one of plaintiff's stated causes of action is that she was subjected to unspecified "prohibited personnel practices." This presumably refers to plaintiff's discrimination claims.

**\*4** As noted in part II, plaintiff's EPA claims are time-barred. Therefore, those claims against the official defendant must be dismissed, as well. Moreover, as noted in part II, plaintiff's FTCA claims may not proceed against either the individual or official defendants.

Plaintiff's Privacy Act claim must also be dismissed. First, the CSRA preempts claims by federal employees under the Privacy Act when such claims allege, as here, personnel actions taken for reasons prohibited by the CSRA. *See Orsay, 289 F.3d at 1129-31* ("because Appellant's Privacy Act claims are in fact complaints about 'prohibited personnel practices' under the CSRA, we hold that the CSRA precludes consideration of those claims."). Moreover, plaintiff has not alleged any conduct actionable under the Privacy Act; she has alleged facts suggesting workplace harassment and discrimination, nothing more.

To the degree plaintiff asserts claims under Whistleblower Protection Act [14] ("WPA"), 5 U.S.C. § 2302(b)(8), her claims must be dismissed for failure to state a claim and failure to exhaust, but not, as the government would have it, because jurisdiction over WPA claims lies only in the Federal Circuit. Normally, employees who claim retaliation under this Act must first report it to the Office of Special Counsel, 5 U.S.C. § 1214(a)(1)(A), and exhaust administrative remedies. Thereafter, the employee may seek redress from the Merit Systems Protection Board (MSPB), 5 U.S.C. §§ 1214(a)(3), with an appeal, if necessary, to the Court of Appeals for the Federal Circuit. *See 5 U.S.C. § 1221(h).* Yet, in a

"mixed case" asserting both WPA and discrimination claims, a plaintiff properly exhausts administrative remedies either (i) by seeking administrative relief with the MSPB, or (ii) by filing a complaint with the applicable agency EEO office, and either body may resolve claims of both types. *See McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir.1995)* ("A mixed case may be filed as a complaint with the agency's EEO department or as an appeal to the MSPB, but not both."); *Quinn v. West, 140 F.Supp.2d 725, 733 (W.D.Tex.2001); 29 C.F.R. § 1614.302(b).* If a plaintiff picks the EEO forum to hear a mixed case, she "may file a civil discrimination case in federal court within 30 days of a final decision by the agency or after 120 days have passed without a decision, but only if no appeal to the MSPB is pursued at that time." *See McAdams v. Reno, 64 F.3d at 1142; 5 U.S.C. § 7702(e)(1)(A); 29 C.F.R. § 1614.310(a).* Thus, assuming the whistleblower claims were properly raised in the EEO administrative proceedings, timely filed here, and not appealed to the MSPB in the interim, [15] there is no venue-related or jurisdictional bar to considering them here. As explained below, the WPA claim does not appear to have been exhausted below. Nonetheless, even assuming plaintiff properly exhausted her administrative remedies and timely filed suit, her complaint does not properly allege a whistleblower claim. Absent from her allegations are essential elements of such a claim.

> [14] It is unclear whether plaintiff's claim that she was "subject to retaliation for whistleblower activities" is intended to state a claim under the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), or merely to allege a retaliation claim under Title VII.

> [15] The WPA action is also untimely. It appears the agency did reach a final decision below, although the date of such decision does not appear in the record. If such a decision issued, suit must be filed within 30 days thereof. 29 C.F.R. § 1614.310(a). Here, the EEO complaint was filed May 25, 2001, final agency decision should have been rendered by November 25, 2001 absent consent of the parties, and this action was filed in the District of Columbia on September 29, 2005. Although it is unclear from the record when the final EEO decision was rendered, it seems quite clear that this occurred in 2001 or 2002, and hence the instant WPA claim is untimely.
>
> The government's motion also reflects than an MSPB appeal in this matter was filed at some point, although it was dismissed as untimely. As

the substance of the MSPB appeal is unknown, it is not clear on this record whether it impacts jurisdiction in the instant case.

**\*5** The elements of a whistleblower retaliation claim are: (1) that the aggrieved employee made a disclosure protected under the WPA, and (2) that the acting official has authority to take, recommend, or approve any personnel action and the official used this authority to take, or refuse to take, a personnel action against the aggrieved employee because of the aggrieved employee's protected disclosure. *See Coons v. Sec'y, U.S. Dep't of Treasury,* 383 F.3d 879, 888 (9th Cir.2004) (citing *Lachance v. White,* 174 F.3d 1378, 1380 (Fed.Cir.1999)). Protected disclosures include, *inter alia,* "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation," if such disclosure is not otherwise prohibited by law. 5 U.S.C. § 2302(b)(8)(A)(i). This provision has been interpreted to require that the circumstances of the disclosure "evidence an intent to raise an issue with a higher authority who is in a position to correct the alleged wrongdoing." *Hooven-Lewis v. Caldera,* 249 F.3d 259, 276 (4th Cir.2001) (citing *Willis v. Dep't of Agriculture,* 141 F.3d 1139, 1143 (Fed .Cir.1998). Therefore, a disclosure or complaint to a wrongdoer is unprotected under the WPA as a matter of law. *See Hooven-Lewis v. Caldera,* 249 F.3d at 277.

Plaintiff's complaint does not disclose or set forth any of the elements of a WPA claim, nor identify which disclosures (if any) were protected, nor which adverse personnel actions (if any) were allegedly in retaliation for the protected disclosures. As to the protected disclosure element, plaintiff may be referring to either (i) her complaints to Le and Barlow about their treatment of plaintiff, (ii) her reports of the alleged harassment by Le to Focarino, and (iii) her reports of the alleged disparate treatment by Barlow to Goldberg. The complaints to Le and Barlow are clearly unprotected under the WPA, as disclosures or complaints to a wrongdoer are not actionable. *See Hooven-Lewis v. Caldera,* 249 F .3d at 277. The complaints to Focarino and Goldberg might constitute protected disclosures in some circumstances, as both complaints were made to supervisors in a position to correct the alleged wrongdoing, and in both cases a reasonable employee could believe the matters complained of to be unlawful, though more clearly so in the case of the harassment by Le. And plaintiff has alleged adverse personnel actions, such as delayed pay grade increases, denial of training opportunities, unfair evaluations, and diminished bonuses. [16] Yet, the WPA claim fails, as plaintiff has failed to allege

a causal connection between any adverse personnel actions and the disclosures. Moreover, the record does not disclose that plaintiff has administratively exhausted the WPA claim; while she raised the Title VII discrimination claims below, she did not allege that they stated a WPA violation and the EEO proceedings therefore did not determine if the WPA was violated. The WPA action must therefore be dismissed as both unexhausted and untimely.

16    Although not pertinent on a motion to dismiss, the summary judgment record reflects that plaintiff suffered no adverse employment action, as she received evaluations from Barlow that were uniformly positive and that she was promoted through the "signatory program" (wherein examiners gradually attain authority to take final actions on patent applications) without any delay.

**\*6** In sum, all of plaintiffs' tort claims, Equal Pay Act claims, WPA claims, and Privacy Act claims must be dismissed.

## IV. Title VII Claims

While the government does not move to dismiss all plaintiff's Title VII claims, it does seek to limit the scope of further proceedings to those specific Title VII claims plaintiff administratively exhausted. This motion is appropriately granted, as in Title VII matters "the EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *See Bryant v. Bell Atlantic,* 288 F.3d 124, 132 (4th Cir.2002). *See also id.* at 133 ("[B]ecause the scope of Bryant's complaint exceeds the limits set by the allegations of Bryant's administrative complaint, we cannot analyze the merits of Bryant's retaliation or color and sex discrimination claims.") Therefore, it is necessary to determine the scope of the administrative proceedings. The EEO investigation framed the issues as follows:

> complainant ... alleged that because of her race (African-American), sex (female), and color (black) she has been subject to an ongoing pattern of discrimination by her supervisor, John Barlow, who has repeatedly treated her differently than white males in her art unit, and has hindered her preparation for promotion to GS-14, the most

recent event being March 15, 2001, when he counseled her for using the wrong procedures to transfer her cases to other examiners.

In particular, as the government's motion notes, plaintiff failed to exhaust her administrative remedies regarding the alleged solicitations by Le. Because these claims were not considered administratively, they may not properly be considered here. The surviving claims, therefore, are those noted in the EEO complaint above; namely those alleging disparate treatment by Barlow on the basis of race, sex, and in retaliation for protected EEO activity, and alleging that a hostile work environment resulted from Barlow's conduct. [17]

[17]    The government's motion for summary judgment on these claims has been fully briefed and awaits disposition.

One last point merits mention. Plaintiff has essentially alleged facts suggesting discrimination in the workplace, and then attached the labels of numerous irrelevant causes of action, such as the Privacy Act and various plainly inapplicable torts (such as abuse of process and tortuous interference with contract), to see if any survive dismissal. This "kitchen-sink" approach to pleading is strongly disfavored. *See Blizzard v. Exel Logistics North America, Inc.,* 2005 WL 3078175 at *5 n. 4 (D.N.J.2005) (noting that such an approach is "not helpful to the resources of the Court or the other attorneys.").

For the above-stated reasons, the government's motion to dismiss is **GRANTED.**

Further proceedings in this matter are **LIMITED** to the claims of (i) disparate treatment by Barlow based on race, sex, and color, and (ii) hostile work environment.

The Clerk is directed to send a copy of this Order to counsel of record and to the plaintiff.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 3760134

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 19 of 49 PageID# 140

Hicks v. Potter, Not Reported in Fed. Supp. (2011)

2011 WL 13196459
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Norfolk Division.

Elbert HICKS, Plaintiff,
v.
John E. POTTER, U.S. Postal Service, Defendant.

Case No. 2:10cv246
|
Signed 01/25/2011

**Attorneys and Law Firms**

Elbert Hicks, Chesapeake, VA, pro se.

Anita Kay Henry, United States Attorney Office, Norfolk, VA, for Defendant.

## ORDER

F. Bradford Stillman, UNITED STATES MAGISTRATE JUDGE

 **\*1**  Before the Court is a motion filed on December 20, 2010, by the Plaintiff acting pro se. The Court will construe Plaintiff's motion as requesting leave to amend his complaint. (ECF No. 7.) Defendant has filed an opposition to the Motion and the Court has not received any further reply from the Plaintiff. (ECF No. 8.) This matter is now ripe for disposition. Having reviewed the record and the briefs submitted by the parties, the Court will rule on this motion without oral hearing pursuant to Local Civil Rule 7(J) and Fed. R. Civ. P. 78(b).

Plaintiff filed suit against the Defendant on May 24, 2010, alleging discrimination on the basis of race, age, disability, and alleging retaliation by the Defendant. (ECF No. 1.) Plaintiff's complaint requests economic and compensatory damages in the prayer for relief and includes a jury trial demand. (ECF No. 1, at 5-6.) Plaintiff attached to the complaint a denial letter dated February 25, 2010, from the United States Equal Employment Opportunity Commission ("EEOC") denying Plaintiff's request for reconsideration of the EEOC decision and detailing complainant's right to file a civil action. (ECF No. 1, attach. 1.) This EEOC letter relates specifically to Elbert Hicks v. U.S. Postal Service. Agency No. 4K230004709.

Plaintiff now files a motion requesting leave to "add two additional administrative cases[,] Agency No. 4K 2 3000-5910 and Agency No. 4K 230-0202-10." (ECF No. 7.) Plaintiff also requests that these two new "cases" be combined with his current case for a trial by jury. Finally, Plaintiff requests leave to amend his complaint to include "my continuing right to restoration" and further allegations of continuing violations involving race, disability, and age discrimination.

Attached to this motion is a letter of decision dated September 23, 2010, from the EEOC affirming the dismissal of complainant's complaint and detailing complainant's right to file a civil action. (ECF No. 7, attach. 1.) This letter relates specifically to Elbert Hicks v. John E. Potter, Agency No. 4K230005910.

Also attached to the motion is a form titled "Dismissal of Formal EEO Complaint" dated November 4, 2010, from the United States Equal Employment Opportunity ("EEO"). (ECF No. 7, attach. 1.) This form relates specifically to Elbert Hicks v. John E. Potter, Agency NO. 4K-230-0202-10.

## AMENDING A COMPLAINT

A pro se litigant is entitled to a liberal reading of his pleadings. Jacobi v. Blocker, 153 F.R.D. 84, 86 (E.D. Va. 1994). A party may amend its pleadings with the court's leave and such leave will be freely given when justice so requires. Fed. R. Civ. Proc. 15(a)(2). However, "when a plaintiff seeks leave to amend his complaint under Rule 15(a), or any other pleading, a copy of the proposed amended pleading, and not simply the proposed amendment, must be attached to the motion. Otherwise the motion will be denied, without prejudice." Williams v. Wilkerson, 90 F.R.D. 168, 170 (E.D. Va. 1981); cited by Hogge v. Stephens, Case No. 3:09cv582, 2010 WL 3834856, at \*8 (E.D. Va. Sept. 24, 2010).

 **\*2**  In this case, Plaintiff did not attach a copy of the proposed amended complaint. This failure does not allow the Court to determine if Defendant will suffer any prejudice from granting Plaintiff leave to amend his complaint. Also, the Court is unable to determine if the proposed amendments are futile. [1] Therefore, to the extent that Plaintiff's motion seeks leave to amend his complaint it is DENIED without prejudice to Plaintiff's right to file a motion to amend with a proposed amended complaint attached.

**1**    Any proposed amended complaint must comply with Federal Rules of Civil Procedure 8(a)(2) and include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any proposed amended complaint must also plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1953 (2009). Furthermore, in the context of a Title VII action, any proposed amended complaint is limited by the charge originally filed with the EEOC and the Plaintiff must plead exhaustion of any administrative prerequisites to suit. See Evans v. Technologies Applications & Service Co., 80 F. 3d 954, 962-63 (4th Cir. 1996).

### REQUEST FOR JURY TRIAL

This matter is currently set for trial on March 1, 2011. Defendant's opposition to Plaintiff's motion mistakenly asserts that to the extent that Plaintiff's motion requests a trial by jury, such request is untimely. **2** The Court notes that Plaintiff requested a trial by jury on page 6 of his Complaint. (ECF No. 1.) Plaintiff therefore properly demanded a jury trial in a pleading "no later than 14 days after the last pleading directed to the issue [was] served" as required by Federal Rules of Civil Procedure 38(b)(1). **3** Accordingly, to the extent that Plaintiff's motion is construed as a motion to amend his complaint to add a jury demand, that request is DENIED as MOOT because the Plaintiff properly demanded a trial by jury in the original complaint. **4**

**2**    Defendant also incorrectly cites Local Civil Rule 38 for the proposition that Plaintiff had twenty days after service of process to file a demand for jury trial. (ECF No. 8, at 5.) The twenty day deadline applies only to "additional parties" added to civil actions. Further, even if the Rule did apply in this instance the Plaintiff's demand found in his complaint would still be timely.

**3**    The Civil Rights Act of 1991 granted plaintiffs who bring actions under Title VII the right to demand a trial by jury if they are seeking compensatory or punitive damages. Pub. L. No. 102-166, 105 Stat. 1071 (1991); 42 U.S.C. § 1981a(c); see 8 James Wm. Moore et al., Moore's Federal Practice ¶ 38.33 (8) (a) (3d ed. 2010). By implication, this statutory right to a trial by jury applies to actions where the federal government is the defendant. See West v. Gibson, 527 U.S. 212, 221-22 (1999); Yamaguchi v. United States Dep't of Air Force, 109 F.3d 1475, 1481-82 (9th Cir. 1997).

**4**    The Court observes that the Rule 16(b) Order states that trial by jury has not been demanded. (ECF No. 6, at 4.) This is clearly at odds with the request for a jury trial set out by Plaintiff in the complaint, and Defendant has not suggested that Plaintiff waived his jury demand at the Rule 16(b) conference.

Therefore, the Clerk is DIRECTED to note the Plaintiff's proper demand for a jury trial and ensure that this matter is scheduled for the same.

IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2011 WL 13196459

---

**End of Document**          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 3368960
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Steven KENNEBECK, Plaintiff,
v.
Janet NAPOLITANO, Secretary
of Homeland Security, Defendant.

No. 1:13cv88.
|
July 3, 2013.

**Attorneys and Law Firms**

Mary Elizabeth Kuntz, Lippman Semsker & Salb LLC, Bethesda, MD, for Plaintiff.

Dennis Carl Barghaan, Jr., United States Attorney's Office, Alexandria, VA, for Defendant.

### MEMORANDUM OPINION

T.S.ELLIS, III, District Judge.

**\*1** In this Title VII,[1] Age Discrimination in Employment Act ("ADEA"),[2] and Whistleblower Protect Act ("WPA")[3] retaliation case, plaintiff, a former federal employee, alleges that he was unlawfully terminated in retaliation for his participation in a Department of Homeland Security ("DHS") Office of the Inspector General ("OIG") investigation. Defendant now seeks threshold dismissal of plaintiff's claims, arguing (i) that plaintiff has not administratively exhausted the WPA claim and (ii) that the WPA does not provide a remedy for unlawful retaliation for reporting workplace discrimination and hence fails to state a claim upon which relief can be granted. In addition, defendant seeks summary judgment on the Title VII and ADEA retaliation claims, arguing that plaintiff cannot show, as required, that his participation in the OIG investigation was the cause of his termination. Plaintiff opposes these motions, arguing (i) that he administratively exhausted the WPA claim, (ii) that the WPA protects against retaliation for reporting federal workplace discrimination, and (iii) that the motion for summary judgment is premature, as discovery had not yet been completed on the issue of causation.

[1] 42 U.S.C. § 2000e et seq.

[2] 29 U.S.C. §§ 621–34.

[3] 5 U.S.C. § 2302(b)(8).

For the reasons that follow, (i) the WPA claim, although administratively exhausted, must be dismissed for failure to state a claim, as the WPA does not provide a remedy for retaliation for the reporting of federal workplace discrimination, and (ii) the motion for summary judgment is premature and is appropriately deferred pursuant to Rule 56(d), Fed.R.Civ.P., pending the completion of discovery on the causation issue.

**I.**[4]

[4] The facts recited here are derived chiefly from the complaint and from the parties' briefs addressing the motions to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

Plaintiff Steven Kennebeck, a resident of New Mexico, brings this Title VII, ADEA, and WPA suit against defendant Janet Napolitano, Secretary of the Department of Homeland Security, headquartered in Washington, D.C. While employed by DHS, Kennebeck worked at the Transportation Security Administration ("TSA"), a division of DHS headquartered in Arlington, Virginia.

On January 8, 2011, the TSA hired Kennebeck as a program manager in the Office of Global Security ("OGS"). Kennebeck was assigned the role of Regional Manager for Africa and the Middle East. As Regional Manager, he was the liaison between the United States and African / Middle Eastern countries on aviation security issues. In this role, he was supervised by Jill Drury, the Director of International Operations.

In June 2011, the TSA Director, John Pistole, received an anonymous letter alleging misconduct and mismanagement in OGS. Based on this letter, the OIG initiated an investigation into allegations of workplace discrimination, favoritism, and abuse of power. As part of this investigation, the OIG interviewed a number of OGS personnel.[5]

5    It appears from the pleadings that the OIG interviewed 144 OGS personnel, including all managers. This represented approximately 60% of the OGS workforce.

On August 11, 2011, Kennebeck attended a meeting with an OIG investigator regarding employment practices in OGS. This meeting lasted approximately 90 minutes, during which time Kennebeck claims that he described what he perceived to be discriminatory conduct, intimidation, favoritism, and unjustified promotions by senior officials. Following this meeting, Roger Friedt, the director of the OGS Business Management Office, asked Kennebeck for a detailed account of the interview. When Kennebeck refused to describe the interview, Kennebeck alleges that Friedt became visibly angry.

**\*2** Following the OIG interview, Kennebeck alleges that he was regularly excluded from a number of major meetings, including meetings that focused on his areas of responsibility. Soon thereafter, on September 14, 2011, the TSA terminated Kennebeck's employment. Kennebeck's supervisor, Drury, explained that the termination was due to certain performance issues. Kennebeck argues that this explanation was a pretext for retaliation, as his actual performance was satisfactory and his interim performance evaluations had been consistently positive.

On October 6, 2011, Kennebeck complained to the TSA's Equal Employment Opportunity Office ("EEO Office"), claiming that his termination was motivated by discrimination on the basis of gender and age, as well as retaliation for his participation in the OIG investigation. On January 17, 2012, Kennebeck filed a formal discrimination and retaliation complaint with EEO Office. Kennebeck's complaint described the discrimination and retaliation as follows:

> During my nine months at OGS I suffered disparate treatment based on my sex (male) and age (51) and, especially, retaliation for reporting the disparate employment practices to the OIG inspector in June 2011. It was this discriminatory and retaliatory

treatment that was the actual cause of my termination.

On March 8, 2012, the EEO Office accepted the formal complaint. In its letter to Kennebeck accepting his complaint, the EEO Office described Kennebeck's claim for purposes of investigation, as follows:

> Whether Complainant, a Regional Manager, SV–0301–K, at the Transportation Security Administration Headquarters, Office of Global Strategies, Arlington, Virginia, was discriminated against on the bases of sex (male), age (YOB: 1959), reprisal (witness: revealed disparate treatment of OGS staff to OIG investigator), when, on September 15, 2011, he was terminated from his position.

Kennebeck, although provided an opportunity to do so, noted no objection to the EEO Office's characterization of his claim. Soon thereafter, the EEO Office retained an outside investigator to investigate Kennebeck's EEO complaint.

After completing the investigation, the outside investigator concluded that Kennebeck's termination by the OGS was either discriminancy nor retaliatory. On July 19, 2012, the EEO Office sent Kennebeck a copy of the investigation file and gave him the option of either administrative litigation before an administrative law judge or the issuance of a Final Agency Decision. Kennebeck requested a Final Agency Decision and, on October 17, 2012, the DHS Office of Civil Rights and Civil Liberties issued a Final Agency Decision, in which it concluded (i) that Kennebeck could not establish that Drury knew that he had made protected disclosures during his OGI interview, (ii) that Drury had articulated legitimate, non-discriminatory reasons for her decision to terminate Kennebeck's employment, and (iii) that Kennebeck could not demonstrate that Drury's articulated reasons were a pretext for discrimination.

**\*3** On January 22, 2013, Kennebeck filed the instant suit, now claiming (i) that he was subject to unlawful retaliation in violation of Title VII, the ADEA, and the WPA, and (ii)

that his due process rights were violated by DHS' conclusion that he was still within his trial period at the time of his termination.

## II.

Exhaustion of administrative remedies is a jurisdictional requirement that is appropriately challenged, as here, pursuant to Rule 12(b)(1). A defendant may challenge subject matter jurisdiction either (i) by alleging "that a complaint fails to allege facts upon which subject matter jurisdiction can be based" or (ii) by alleging "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir.2009) (quoting *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982)). Where, as here, the "defendant makes a facial challenge to subject matter jurisdiction ... the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* [6]

[6]    It is only where "the defendant challenges the factual predicate of subject matter jurisdiction [that] '[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." *Kerns,* 585 F.3d at 192 (quoting *Adams,* 697 F.2d at 1219).

Rule 12(b)(6) challenges are governed by a different standard: Dismissal is required where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint is facially plausible "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 256 (4th Cir.2009) (internal quotation marks omitted).

## III.

The WPA protects "whistle-blowing to 'Special Counsel, or to the Inspector General of an agency or another employee

designated by the head of the agency to receive such disclosures[.]' " *Bonds v. Leavitt,* 629 F.3d 369, 380 (4th Cir.2011). To establish a WPA claim, a plaintiff must show (i) "that [he] made a protected disclosure under 5 U.S.C. § 2302(b)(8)" and (ii) that he "suffered an adverse personnel action based on [this] disclosure[.]" *Id.* at 381. A protected disclosure is "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Hooven–Lewis v. Caldera,* 249 F.3d 259, 276 (4th Cir.2001). The second element of a WPA claim "is common to all actions for retaliation, and is in essence a requirement of a causal connection." *Id.*

A plaintiff who claims to have suffered retaliation in violation of the WPA must typically report the claim to the Office of Special Counsel. *See* 5 U.S.C. § 1214(a)(1)(A). Thereafter, the plaintiff "may seek redress from the Merit Systems Protection Board (MSPB), with an appeal, if necessary, to the Court of Appeals for the Federal Circuit." *Gordon v. Gutierrez,* No. 1:06cv861, 2006 WL 3760134, at *4 (E.D.Va. Dec.14, 2006). Yet, when a plaintiff complains both of violations of the WPA and of Title VII, a so-called mixed case, the plaintiff may file "a complaint with the agency's EEO department or as an appeal to the MSPB[.]" *McAdams v. Reno,* 64 F.3d 1137, 1141 (8th Cir.1995); *Hendrix v. Snow,* 170 Fed. App'x 68, 79 (11th Cir.2006) ("if the employee raises a 'mixed case claim,' that is, one alleging both WPA and Title VII claims, the employee may seek relief either by filing a complaint with the agency's EEO department, or by appealing directly to the MSPB"); 5 U.S.C. § 7702. Regardless of which route of redress a plaintiff chooses, the plaintiff must administratively exhaust his remedies prior to bringing suit in a federal court, as "[u]nder no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action directly before it in the first instance." *Stella v. Mineta,* 284 F.3d 135, 142 (D.C.Cir.2002).

## IV.

**\*4** Analysis here properly begins with administrative exhaustion, as courts lack jurisdiction over WPA claims prior to administrative exhaustion. *See Stella,* 284 F.3d at 142. And because "subject-matter jurisdiction is a necessary prerequisite to any merits decision by a federal court," a federal court "necessarily acts *ultra vires* when it considers

the merits of a case over which it lacks subject-matter jurisdiction." *Constantine v. Rectors and Visitors of George Mason University,* 411 F.3d 474, 480 (4th Cir.2006) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

It is well-settled in the Fourth Circuit that the "touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same[.]" *Sydnor v. Fairfax County, Va.,* 681 F.3d 591, 595 (4th Cir.2012) (quoting *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir.2000)) (internal citations omitted). Thus, "so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Id.* at 594 (internal quotation marks omitted). Accordingly, the Fourth Circuit has found exhaustion "where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system,' and where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Id.* (quoting *Chisholm v. U.S. Postal Svc.,* 665 F.2d 482, 491 (4th Cir.1981)) (internal citations omitted). The Fourth Circuit has explained that the purpose of its exhaustion rule is "to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Id.*

These principles, applied here, compel the conclusion that Kennebeck has administratively exhausted his WPA claim. To begin with, Kennebeck has complained of only a single retaliation, namely his termination allegedly in retaliation for his participation in the OIG investigation. It is clear that Kennebeck complained of this retaliation in his EEO complaint, when he complained of "retaliation for reporting the disparate employment practices to the OIG inspector in June 2011." Deft.'s Mem. in Supp. of Mot. to Dismiss, Exh. K. And, assuming for jurisdictional purposes that Kennebeck's participation in the OIG investigation can give rise to a WPA claim, this alleged retaliation forms the basis of both Kennebeck's Title VII and WPA retaliation claims. Thus, the alleged Title VII and WPA retaliatory actions are not merely reasonably related, but are indeed the same. Accordingly, Kennebeck's EEO complaint sufficiently exhausted his administrative remedies.

**\*5** DHS opposes this result, arguing that Kennebeck did not exhaust his WPA claim because he did not specifically state in his EEO complaint that he was subject to WPA retaliation in addition to Title VII retaliation. In support of this argument, DHS relies on a Third Circuit case, wherein the Third Circuit explained that "stating a claim for reprisal based on EEO activity alone, without any indication of an intention to state a claim for whistleblowing, does not support a reasonable expectation that the agency would investigate a WPA claim." *Fleeger v. Principi,* 221 Fed. App'x 111, 117 (3d Cir.2007). Yet, a close reading of *Fleeger* makes clear that it is inapposite to the case at bar. In *Fleeger,* the plaintiff complained to her agency's EEO Office, alleging that she was retaliated against for filing "complaints in 2001 and [January] 2002 about work conditions [and that in] response [the agency] removed [her] and placed [her] in [an] isolation/file room[.]" *Id.* at 113. It was only in her district court complaint that the plaintiff complained, for the first time, of retaliation in violation of the WPA for emails that she had sent to the White House complaining about agency management. *Id.* at 113. Thus, the facts in *Fleeger* stand in sharp contrast to the facts here because in *Fleeger* the alleged WPA protected activity was factually unrelated to the Title VII protected activity, whereas here, the activity allegedly protected by the WPA is precisely the same activity allegedly protected by Title VII. Accordingly, Kennebeck's EEO complaint placed DHS on notice of the alleged retaliation. Indeed, to impose a requirement that a plaintiff must specifically state that the alleged retaliation was in violation of both the WPA and Title VII when the two claims share the same operative facts could result in 'tripping up' unwary plaintiffs over technicalities, the very result cautioned against by the Fourth Circuit. *See Sydnor,* 681 F.3d at 594. Accordingly, defendant's jurisdictional challenge fails.

## V.

Analysis next proceeds to whether Kennebeck has stated a claim for relief under the WPA. The WPA protects whistleblowers from retaliation for making protected disclosures under 5 U.S.C. § 2302(b)(8). *See Bonds,* 629 F.3d at 381. Section 2302(b)(8) defines as protected disclosure as "any disclosure of information by an employee ... which the employee ... reasonably believes ... evidences ... (i) any violation of any law, rule, or regulation[.]" Despite this broad language, courts have made clear that § 2302(b) (8) must be read in conjunction with the other provisions of § 2302(b), which prohibit retaliation for activities such

as reporting discrimination and exercising grievance rights. Thus, in *Spruill v. Merit Systems Protection Board,* the Federal Circuit, in the context of protected activity that fell within § 2302(b)(8) and § 2302(b)(9)(A) [7], cautioned that "to read the scope of § 2302(b)(8) as including activities squarely within 2302(b)(9)(A) would have the effect of reversing this carefully considered Congressional decision [limiting certain remedies to violations of § 2302(b)(8) ] ... and would render § 2302(b)(9)(A) largely irrelevant, if not completely superfluous." 978 F.2d 679, 690–91 (Fed.Cir.1992). Nor does this result deprive an aggrieved person of a remedy, as "investigative and remedial measures are available ... through the EEOC." *Id.* at 692. The same principle applies where, as here, a federal employee complains of discrimination or retaliation under Title VII, as that activity is protected by § 2302(b)(1) and § 2302(b)(9), and thus, does not qualify as a protected disclosure under § 2302(b)(8). *See Serrao v. Merit Sys. Protection Bd.,* 95 F.3d 1569, 1575 (Fed.Cir.1996) ("the filing of a complaint with the Equal Employment Opportunity Commission ..., in which an employee alleged discriminatory treatment by an agency in violation of Title VII of the Civil Rights of 1964, did not constitute a whistleblowing disclosure within the meaning of section 2302(b)(8), but instead, was a nonwhistleblowing disclosure under section 2302(b)(9)(A)"). Accordingly, the MSPB has repeatedly held that "[a]lleged disclosures that an agency engaged in discrimination and created a hostile work environment in violation of Title VII are covered under 5 U.S.C. § 2302(b)(1) and (b)(9) and are excluded from coverage under § 2302(b)(8)." *McDonnell v. Dep't of Agriculture,* 108 M.S.P.R. 443, 451 (2008). [8] This conclusion is a sound one, as employees reporting workplace discrimination are protected from retaliation by Title VII and to afford those employees additional protection under the WPA would render the Title VII protections superfluous. Indeed, Kennebeck has cited no authority, nor has any been found, that has held that a complaint of discrimination or retaliation under Title VII constitutes a protected disclosure under the WPA. Accordingly, because Kennebeck's allegedly protected disclosure is a report of Title VII discrimination, it is not a protected disclosure under § 2302(b)(8). Thus, Kennebeck has failed to state a claim under the WPA and his WPA claim must therefore be dismissed.

[7]    5 U.S.C. § 2302(b)(9)(A) prohibits retaliation for the exercise of appeal, complaint, or grievance rights.

[8]    *See also McCorcle v. Dep't of Agriculture,* 98 M.S.P.R. 363, 374 (2005) (same); *Gonzales v.*

*Dep't of Housing and Urban Development,* 64 M.S.P.R. 314, 317–18 (1994) (activity such as filing an EEO complaint, testifying at another employee's EEOC hearing, and assisting someone in pursuing a complaint "are activities that fall within 5 U.S.C. § 2302(b)(9), and thus do not constitute whistleblowing disclosures protected under [§ 2302(b)(8) ]").

## VI.

**\*6** Summary judgment "is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 213 (4th Cir.2007) (quoting Rule 56(c), Fed.R.Civ.P.). The facts must be construed "in the light most favorable to [the non-movant], and [the court] may not make credibility determinations or weigh the evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). There must "be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson,* 477 U.S. at 249–50). Yet, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson,* 477 U.S. at 250 n. 5. Thus, if

> a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule [56(d) ] affidavit stating "that it could not properly oppose a motion for summary judgment without a chance to conduct discovery."

*Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir.2002) (quoting *Evans v. Techs. Applications & Svc. Co.,* 80 F.3d 954, 961 (4th Cir.1996)).

Here, Kennebeck has filed such an affidavit, albeit a somewhat anemic one, (i) stating that he needs the opportunity to conduct discovery on the issue of causation and (ii) identifying specific documents in the possession of the DHS that pertain to causation. Accordingly, it is appropriate to defer the motion for summary judgment on the issue of causation until discovery on this issue has been completed.

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3368960

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 542977
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Harrisonburg Division.

NEXUS SERVICES, INC., Plaintiff,
v.
Kimberly Sue VANCE in her official
and individual capacity, Defendant.

Case No. 5:17-CV-00072
|
Signed 01/24/2018

**Attorneys and Law Firms**

Andrew Ready Tate, Mario Bernard Williams, Nexus Caridades Attorneys, Inc., Atlanta, GA, Jessica Nichole Sherman-Stoltz, Nexus Caridades Attorneys, Inc., Verona, VA, for Plaintiff.

Richard Hustis Milnor, Taylor Zunka Milnor & Carter Ltd., Chartlottesville, VA, for Defendant.

**MEMORANDUM OPINION**

Michael F. Urbanski, Chief United States District Judge

*1  This matter comes before the court on defendant's Motions to Dismiss, ECF Nos. 6, 8, in which defendant Kimberly Sue Vance ("Vance") moves to dismiss Counts One and Three of plaintiff Nexus Services, Inc.'s ("Nexus") Complaint (the "Complaint" or "Compl."), ECF No. 1. For the reasons discussed below, the court will **GRANT** Vance's Motions to Dismiss.

**I.**

The Complaint and attached statements contain the following allegations. [1] Vance, an off-duty police officer with the City of Waynesboro Police Department, Compl. ¶ 2, drove her personal vehicle onto Nexus' campus in Verona, Virginia, id. ¶ 8. Vance was wearing her police polo shirt, a gun belt, and a badge around her neck. Interim Healthcare Witness Statement ("Interim Statement"), Compl. Ex. 2, at 1.

[1]   In considering a Rule 12(b)(6) motion to dismiss, the court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment proceeding. Fed. R. Civ. P. 12(d). The court may, however, "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), ... so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Accordingly, the court considers the statements attached to the pleadings as part of the complaint.

A Nexus security guard stopped Vance and asked her what she was doing, to which Vance responded that she was going to visit Interim Healthcare ("Interim") to seek home healthcare services. Id. ¶ 9; Security Guard Witness Statement ("Sec. Guard Statement"), Id. Ex. 1, at 1. The security guard noticed that Vance was wearing a police polo, but could not identify the department name on the polo. Sec. Guard Statement 1. Based on Vance's statement, the security guard let her enter the premise and pointed her in the direction of Interim. Id.; Compl. ¶ 10.

Once Vance entered Interim's office, she was approached by an Interim employee. Compl. ¶ 11. Vance informed the employee that she had lied to the guard to gain entrance to Nexus' campus to "look around." Id. ¶¶ 11, 19—20; Interim Statement 1. Nevertheless, Vance talked with the employee about Vance's mother and some medical conditions facing her mother. Interim Statement 1. She then asked the employee how long the Nexus guard shack had been there. Id. After she left Interim, Vance drove her vehicle to the rear portion of the Nexus property "in an apparent effort to 'look around' the entire campus." Compl. ¶ 21. Vance was on Nexus' campus for no more than three minutes. Sec. Guard Statement 1 (noting that Vance entered the campus "at approximately 13:10" and "exit[ed] the campus at approximately[ ] 13:12").

Vance entered the campus on behalf of an unnamed third party, a former Nexus employee with whom Vance associates. Id. ¶¶ 14, 24. The Complaint does not plead that the third party had any connection to the City of Waynesboro police department. Instead, the Complaint pleads that "Vance was not authorized by any superior officer to conduct a search of [Nexus'] corporate campus on the date in question." Id. ¶ 28.

*2  Based on these allegations, the Complaint asserts three counts against Vance: (1) Count One, a Section 1983 claim based on a violation of the Fourth Amendment's prohibition

2018 WL 542977

against unlawful searches; (2) Count Two, a state-law trespass claim; and (3) Count Three, a state-law defamation claim.[2]

[2]   The court cannot exercise diversity subject matter jurisdiction over the state-law claims, as the Complaint alleges Nexus is a Virginia corporation and Vance is a Virginia resident.

## II. Legal Standard

Vance moves to dismiss Counts One and Three under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Rule 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court must construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [a complaint's] legal conclusions." Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

## III. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law.[3] Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

[3]   While "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Mich. Dep't. of State Police. 491 U.S. 58, 71 (1989), "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983," Hafer v. Melo, 502 U.S. 21, 31 (1991). Because Vance is being sued in her individual capacity, it is clear she is a "person" within the meaning of § 1983. Id.

### A. Color of State Law

A person acting under color of state law "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999). Accordingly, "[t]he color of law requirement excludes from the reach of § 1983 all 'merely private conduct, no matter how discriminatory or wrongful.' " Rossignol v. Voorhaar. 316 F.3d 516, 523 (4th Cir. 2003) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). "[T]he ultimate question of whether an actor was a state actor or functioning under color of law is a question of law for the court." Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 344 n.7 (4th Cir. 2000).

 **\*3**   "[T]he nature of the act performed is controlling" as to whether a person acted under color of state law. Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). Whether an off-duty officer acts "under color of law turns on the nature and circumstances of the [employee's] ... conduct and the relationship of that conduct to the performance of his official duties." Kimberlin v. Frey, No. GJH-13-3059, 2017 WL 3141909, at \*7 (D. Md. July 21, 2017) (alterations in original) (quoting Naffe v. Grey, 789 F.3d 1030, 1036 (9th Cir. 2015)). While indicia of state authority, "such as being on duty, wearing a uniform, or driving a patrol car," may be helpful to a court in determining if an officer acted under color of state law, these indicia are not determinative, and a court must focus on the act itself. Revene, 882 F.2d at 872; see also Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975) ("The fact that a police officer is on or off duty, or in or out of uniform is not controlling.").

On the one hand, "where the action arises out of purely personal circumstances, courts have not found state action even where a defendant took advantage of his position as a public officer in other ways." Rossignol, 316 F.3d at 524

2018 WL 542977

(collecting cases); see also Screws v. United States, 325 U.S. 91, 111 (1945) ("[A]cts of officers in the ambit of their personal pursuits are plainly excluded" from Section 1983 liability.); Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997) ("[A] state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law.").

On the other hand, "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action." Griffin v. Maryland, 378 U.S. 130, 135 (1964). "[A]ny action purportedly taken pursuant to [official] authority would be under color of state law whether the deputies 'hew to the line of their authority or overstep it.' " Revene, 882 F.2d at 874 (quoting Screws, 325 U.S. at 111). "Section 1983 therefore includes within its scope apparently private actions which have a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.' " Rossignol, 316 F.3d at 523 (quoting Jackson v. Metro Edison Co., 419 U.S. 345, 351 (1974)); see also id. at 254 ("[I]f a defendant's purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing he acted under color of state law.").

Cases determining if an officer acted under color state law bear this conclusion out. For instance, courts have found an officer was acting under color of law when an officer shot a civilian over an argument whose "genesis was unquestionably in the performance of police duties," Layne v. Sampley, 627 F.2d 12, 13 (6th Cir. 1980); "when [an officer] conspired with two civilians to murder a woman who had filed police brutality charges against him." Rossignol, 316 F.3d at 524 (citing United States v. Causey, 185 F.3d 407, 415—16 (5th Cir. 1999)); or when officers "sought to censor plaintiffs' criticism of them in their official roles" and use "their official positions" as "an intimidating asset in the execution of their plan." Id. at 519.

By contrast, courts have found an officer was not acting under color of law when an off-duty officer repossessed a vehicle, Wallace v. Chrysler Credit Corp., 743 F. Supp. 1228, 1235 (W.D. Va. 1990), when two off-duty officers allegedly assaulted the plaintiff but "the underlying nature of their dispute was personal," Barna v. City of Perth Amboy, 42 F.3d 809, 817 (3d Cir. 1994), and when an officer murdered his estranged wife's significant other with his service revolver after driving his police vehicle, Boliek v. Frendlich, No. Civ.

RDB 04-3655, 2005 WL 1363980, at *4 (D. Md. June 7, 2005).

## B. Application

*4  With this law in mind, the court focuses on "the nature of the act" that Vance "was performing," Pruitt v. Pernell, 360 F. Supp. 2d, 738 744 (E.D.N.C. 2005), and finds that Vance was not acting under color of state law. Nexus pleads that Vance lied to enter Nexus' campus solely to "look around" on behalf of the unnamed third party, Vance's friend and a former Nexus employee. This action was purely private: Any private individual could have engaged in the same actions alleged: unlawfully entering Nexus' campus. Put another way, there are no allegations in the Complaint that Vance's status as a police officer "enabled [her] to execute [her] scheme in a manner that private citizens never could have." Rossignol, 316 F.3d at 526. Nexus' failure to tether the purpose or execution of the alleged trespass with Vance's official role prevents it from "demonstrat[ing] that [Vance's] actions bore a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.' " Id. at 525 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Instead, Vance "was bent on a singularly personal frolic." Martinez v. Colon, 54 F.3d 980, 987 (1st Cir. 1995).

Especially problematic for Nexus' position, Nexus includes two statements from the individuals who interacted with Vance during her foray onto Nexus' campus, which the court considers in adjudicating Vance's motion to dismiss. See Trimble Navigation Ltd., 484 F.3d at 705. Neither of the statements suggests either that Vance gained access to Nexus' campus or that Nexus or Interim employees kowtowed to Vance's request to "look around" because of her official position. The court can divine nothing from the Complaint or the attached statements from which the court can reasonably imply that Vance was acting under color of state law. [4]

---

[4]     Nexus spills much ink discussing Revene. See Pl.'s Consolidated Resp. Opp. Def. Kimberly Sue Vance's Mot. Dismiss Count One Mot. Dismiss Count Three, ECF No. 16, at 4—12. Revene, however, is inapposite. It is true that Revene found that the trial court construed the allegations of the complaint too narrowly, and "when read with a slightly different cast, they can also be viewed as consistent with an officer's '[m]isuse of power.' "

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 30 of 49 PageID# 151

Nexus Services, Inc. v. Vance, Not Reported in Fed. Supp. (2018)

2018 WL 542977

Revene. 882 F.2d at 873—74 (alteration in original) (quoting Monroe v. Pape, 365 U.S. 167, 183—86 (1961)). Revene was decided before Iqbal and Twombly, limiting its application. See Claudio v. Sawyer, 409 Fed.Appx. 464, 466 n.1. (2d Cir. 2011). Moreover, Nexus willingly supplemented the allegations in the Complaint with the attached statements. When the court draws all reasonable inferences from the facts in the Complaint and the statements, it is clear that the legal allegations "are not supported by specific facts pleading," which "warrant[s] dismissal." Revene, 882 F.2d at 873.

Nexus takes two paths to escape this conclusion. First, Nexus claims that Vance was acting under color of state law because she wore a Waynesboro police polo shirt, gun belt, and badge around her neck at the time she entered Nexus' property. To be sure, indicia of official authority may be helpful to the court when determining whether Vance acted under color of state law. See Revene, 882 F.2d at 872. But it is equally true that "[a]n officer can be on-duty, in uniform, in the station house itself and still not be acting under color of state law." Bailey v. Prince George's Cty., 34 F. Supp. 2d 1025, 1027 (D. Md. 1999); see also Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990) ("[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." (alteration in original) (internal quotations and citations omitted)).

Nexus ignores Rossignol, in which the Fourth Circuit held that "where the action arises out of purely personal circumstances, courts have not found state action even where a defendant took advantage of his position as a public officer in other ways." Rossignol, 316 F.3d at 524. The indicia described in Rossignol "enabled [the officers] to execute their scheme in a manner that private citizens never could have." Id. at 526. Unlike in Rossignol, nothing suggests that Vance's identify as a police officer played any role at all in the alleged trespass. Cf. id. at 526 (noting "the deputies' identities as state officers played a role at several points" during the constitutional violation). Instead, the court has already determined that Vance's alleged actions were purely private. That is sufficient for the court to grant the motion to dismiss, as the court found that there is no suggestion in the pleadings that Vance used her official position to gain access to Nexus' campus.

**\*5** Next, Nexus argues that Vance acted under color of state law because "state and local law ... vested Vance with

authority as a law enforcement officer regardless of being 'off duty' and regardless of being outside the territorial boundaries of Waynesboro." Pl.'s Consolidated Resp. Opp. Def. Kimberly Sue Vance's Mot. Dismiss Count One Mot. Dismiss Count Three, ECF No. 16, at 7. It is true that Virginia law grants law enforcement officers the authority to perform their duties "[w]henever the necessity arises," and that such acts "shall be deemed conclusively to be for a public and governmental purpose." Va. Code. Ann. § 15.2-1724. [5]

[5]    Additionally, the Waynesboro Code of Ordinances provides that an officer "shall devote [her] whole time and attention to the business of the police department, and ... shall at all times be prepared to act immediately, on notice that [her] services are required by the city manager, chief of police or at the call of any citizen." Waynesboro, Virginia, Municipal Code art. Ill, § 42-32 (2017).

But again, it is also true that the fact that an officer is on duty is not dispositive as to whether she acts under color of state law. See Bailey, 34 F. Supp. 2d at 1027; accord Hall v. Witteman, 569 F. Supp. 2d 1208, 1221 (D. Kan. 2008) ("[E]ven the acts of on-duty law enforcement officers are not always under color of law."); Hill v. Barbour, 787 F. Supp. 146, 149 (N.D. Ill. 1992) ("[W]hether a defendant was on or off duty does not resolve the question of whether he acted under color of law."). And the Virginia statute circumscribes "whenever the necessity arises" authority to, in pertinent part, "the enforcement of laws designed to control or prohibit the use or sale of controlled drugs," "responding to any law enforcement emergency involving any immediate threat to life or public safety," and to "assist in meeting ... emergency or need." Va. Code Ann. § 15.2-1724. None of those exigencies applies here.

More importantly, again, the nature of act controls. The court has already determined that Vance's actions were purely private and not under color of state law. Because her actions were purely private, whether she was on or off duty is simply not relevant.

### IV. Defamation

The next issue is whether Nexus states a plausible state-law defamation claim against Vance. [6] A defamation plaintiff must prove: "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 269 Va.

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 31 of 49 PageID# 152
Nexus Services, Inc. v. Vance, Not Reported in Fed. Supp. (2018)

2017 WL 542977

569, 612 S.E.2d 203, 206 (2005). The parties dispute whether Nexus has alleged an actionable statement. To be actionable, a statement must be both false and "defamatory," meaning that it "tend[s] to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Schaecher v. Bouffault, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015). "Because the court presumes falsity" on a motion to dismiss, "the key actionability question in deciding a motion to dismiss is whether the statements referenced in the Complaint are defamatory." McCray v. Infused Sols., LLC, No. 4:14cvl58, 2017 WL 4111958, at *3 (E.D. Va. Sept. 15, 2017) (quoting Goulmamine v. CVS Pharmacy, Inc., 138 F. Supp. 3d 652, 659 (E.D. Va. 2015)). Whether a statement is defamatory, and thus actionable, is a matter of law to be decided by the court. Hatfill v. New York Times Co., 416 F.3d 320, 331 (4th Cir. 2005) (abrogated on other grounds by Va. S. Ct. Rule 1:6(a)).

6    Plaintiffs must bring defamation clams under state law, not Section 1983. See Siegert v. Gilley, 500 U.S. 226, 233 (1991).

A defamatory statement may be made directly or by implication, and the court "should consider not only the words themselves but also the inferences fairly attributable to them." Id. (internal citations and quotations omitted). In considering defamatory charges made directly, "statements must be more than merely unpleasant or offensive; rather, they must make the plaintiff appear odious, infamous, or ridiculous." Shaheen v. WellPoint Cos., 490 Fed.Appx. 552, 555 (4th Cir. 2012) (internal quotations and citations omitted). Certain defamatory statements are actionable per se, including statements that "impute to a person the commission of some criminal offense involving moral turpitude... [or] that prejudice such person in his or her profession or trade." Hatfill, 416 F.3d at 330 (internal quotations omitted); see also Tronfeld v. Nationwide Mut. Ins. Co., 272 Va. 709, 713, 636 S.E.2d 447, 449-50 (2006).

*6  Courts generally ascribe to the allegedly defamatory words their "plain and natural meaning." Hatfill, 416 F.3d 320 at 331 (quoting Carwile v. Richmond Newspapers, Inc., 196 Va. 1, 7, 82 S.E.2d 588, 592 (1954)). Specifically, the court must determine whether "the words ascribed to the defendants, given their plain meaning, are reasonably capable of conveying the defamatory innuendo of which the plaintiff complains." Pendleton v. Newsome, 290 Va. 162, 175, 772 S.E.2d 759, 765 (2015); see Va. Citizens Def. League v. Couric, No. 3:16-cv-00757-JAG, 2017 WL 2364198, at *4 (E.D. Va. May 31, 2017). In doing so, the court "must

accept reasonable inferences in the plaintiffs' favor, but must resist using innuendo to extend the meaning of defamatory language beyond its ordinary meaning." Couric, 2017 WL 2364198, at *4 (citing Webb v. Virginian-Pilot Media Cos., 287 Va. 84, 89, 752 S.E.2d 808, 811 (2014)).

Nexus alleges that Vance's presence as an off-duty police officer, combined with her statement to the Interim Healthcare employee that she was using their office as a ruse to "look around" Nexus' campus, was defamatory per se because it imputed to Nexus the commission of a crime involving moral turpitude or lack of integrity in conducting its business. "In determining whether or not the language does impute a criminal offense the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them." Hatfill, 416 F.3d 320 at 331 (quoting Schnupp v. Smith, 249 Va. 353, 360, 457 S.E. 2d 42, 46 (1995)). As such, even though Vance's words need not "make the [defamatory] charge in express terms," they must "naturally and presumably be understood by those who [heard] them as charging a crime." Id.

Even with all inferences drawn in favor of Nexus, the facts as pleaded simply do not support such a finding. Vance's statement of wanting to "look around," even made by someone in police garb, cannot be "naturally and presumably" construed as charging Nexus with a crime. Id. At most, Vance's statement is capable of speculatively conveying that Nexus is involved with something negative, and that is only if the court impermissibly extends the meaning of "look around" beyond its ordinary meaning. See Couric, 2017 WL 2364198, at *4; Webb, 287 Va. at 89, 752 S.E.2d at 811. Even taken in the light most favorable to Nexus, Vance's actions accompanied by the words wanting to "look around" are not defamatory as a matter of law. This kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegation that is not facially plausible. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Accordingly, Nexus has failed to allege sufficient facts to state a plausible claim of defamation under Virginia law.

### V. Conclusion

For the reasons stated above, the court **GRANTS** Vance's motions to dismiss Counts One and Three, ECF Nos. 6 and 8, and those counts are **DISMISSED with prejudice.** The court declines to exercise supplemental jurisdiction over Count Two, see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350

**Nexus Services, Inc. v. Vance, Not Reported in Fed. Supp. (2018)**

2018 WL 542977

(1988), and the case is stricken from the active docket of the court.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 542977

---

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

39 F.3d 1178
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. See CTA4 Rule 32.1.
United States Court of Appeals, Fourth Circuit.

Thomas Wayne NGUYEN, Plaintiff Appellant,

v.

UNITED STATES DEPARTMENT OF
DEFENSE, The Honorable William J. Perry,
Secretary of Defense, Defendant Appellee.

No. 94–1748.
|
Submitted Sept. 6, 1994.
|
Decided Oct. 25, 1994.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. James C. Cacheris, Chief
District Judge. (CA–94–233–A)

**Attorneys and Law Firms**

Thomas Wayne Nguyen, appellant pro se.

Theresa Carroll Buchanan, Office of the United States
Attorney, Alexandria, VA, for appellee.

**Synopsis**
E.D.Va.

AFFIRMED.

**Procedural Posture(s):** On Appeal.

Before WILKINS and HAMILTON, Circuit Judges, and
SPROUSE, Senior Circuit Judge.

**Opinion**

PER CURIAM:

**\*1** Thomas Nguyen appeals the district court's orders
dismissing this action filed pursuant to the Federal Tort
Claims Act (FTCA) and denying Nguyen's Fed.R.Civ.P. 59(e)
motion for reconsideration of that dismissal. Through the
lawsuit, Nguyen attempted to raise various challenges to a
number of personnel decisions made during his tenure as
a computer analyst with the Army Personnel Information
Systems Command. We affirm.

The Civil Service Reform Act (CSRA) provides "the
exclusive procedure for challenging federal personnel
decisions." Petrini v. Howard, 918 F.2d 1482, 1485 (10th
Cir.1990). A plaintiff may not avoid the CSRA by cloaking
his lawsuit in the guise of an FTCA action. Rollins v. Marsh,
937 F.2d 134, 139 (5th Cir.1991).

We conclude that Nguyen's tort claims, which stem from his
federal employment, are barred by the exclusive, preemptive
nature of his CSRA remedies. Accordingly, the decision of
the district court is affirmed.

As our review of the record and other materials before us
reveals that it would not significantly aid the decisional
process, we dispense with oral argument.

*AFFIRMED*

**All Citations**

39 F.3d 1178 (Table), 1994 WL 582642

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 5191394
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Garry RISSMAN, Plaintiff,

v.

Michael CHERTOFF et al., Defendants.

No. 08 Civ. 7352(DC).
|
Dec. 12, 2008.

West KeySummary

**1**    **Civil Rights** 👈 **Particular Cases**

An airport luggage screener could not maintain
an employment discrimination claim since
discrimination based on an individual's sexual
orientation or perceived sexual orientation was
not actionable under federal law. Though
individuals may maintain a claim under Title
VII for adverse employment actions caused by
their lack of conformity to gender stereotypes,
the screener did not allege any facts that
would support a gender discrimination claim. 42
U.S.C.A. § 2000e et. seq.

18 Cases that cite this headnote

**Attorneys and Law Firms**

Garry Rissman, New York, NY, pro se.

***MEMORANDUM DECISION***

CHIN, District Judge.

**\*1**  *Pro se* plaintiff Garry Rissman filed a complaint on
August 19, 2008, against defendant Michael Chertoff under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e
et. seq., and for alleged violations of his Fifth Amendment
rights under *Bivens v. Six Unknown Agents of the Fed. Bureau
of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619
(1971). Upon review of the complaint, I ordered plaintiff to

show cause why his Title VII claim for discrimination based
on sexual orientation or perceived sexual orientation and his
*Bivens* claim should not be dismissed. Plaintiff submitted a
response on November 5, 2008. He also filed an amended
complaint on November 3, 2008, naming nine additional
defendants, and adding a defamation claim against defendant
John Allen. As defendants have not answered, plaintiff has the
right to file an amended complaint. His amended complaint is
accepted, and I consider the merits of the amended complaint.

Plaintiff has now had two opportunities to articulate a claim.
Upon review of plaintiff's amended complaint, as well as his
November 5, 2008 response to my order to show cause, I
am dismissing the amended complaint *sua sponte* for failure
to state a claim upon which relief may be granted. My
reasons are as follows: first, plaintiff may not maintain a
claim for employment discrimination (including any hostile
work environment claim) based on his sexual orientation or
perceived sexual orientation; second, plaintiff fails to allege
sufficient facts to assert a plausible claim for employment
discrimination (including hostile work environment) based
on race, religion, or age; third, plaintiff's *Bivens* claim is
time-barred by the applicable statute of limitations; and
fourth, plaintiff's defamation claim is also time-barred by the
applicable statute of limitations.

***BACKGROUND***

Plaintiff was employed from September 1, 2002, to July 27,
2004, by the Transportation Security Agency ("TSA") as a
passenger and luggage screener at LaGuardia International
Airport in Queens, New York. (Am.Compl.¶ 19). He is a
white, Jewish, gay male who was 48 years old when he
commenced working at TSA. (*Id.* ¶ 21). He contends that
during his employment with TSA, he was discriminated
against on the basis of his race, religion, age, sexual
orientation, and perceived sexual orientation, and he was
denied equal protection of the laws. He also contends
defendant Allen lied about him during TSA's investigation
into his discrimination claims. (*Id.* ¶¶ 34-35).

***DISCUSSION***

**A.** *Pleading Standard*
At the pleadings stage, plaintiff's amended complaint must
only satisfy Fed.R.Civ.P. 8(a), which calls for "a short and
plain statement of the claim," and allege " 'enough facts to

state a claim for relief that is plausible on its face.' " *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir.2007) (quoting *Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1975, 167 L.Ed.2d 929 (2007)). A *prima facie* case is not required. *Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338, 343 (2d Cir.2006).

**\*2** Here, neither plaintiff's complaint nor his response to my order to show cause asserts facts sufficient to state a plausible claim for relief. Even according *pro se* plaintiff's amended complaint the leniency it is due and interpreting it "to raise the strongest arguments that [it] suggest[s]," plaintiff's amended complaint fails to state a claim upon which relief can be granted. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quotations omitted).

## B. *Employment Discrimination*

### 1. *Sexual Orientation Discrimination*
As discussed in my September 22, 2008 order to show cause, employment discrimination and workplace harassment based on an individual's sexual orientation or perceived sexual orientation are not actionable under federal law. *See Dawson v. Bumble & Bumble,* 398 F.3d 211, 217-18 (2d Cir.2005). Though individuals may maintain a claim under Title VII for adverse employment actions caused by their lack of conformity to gender stereotypes, *id.* at 218, plaintiff does not allege any facts that would make out a case for gender discrimination under Title VII. Therefore, plaintiff's claims alleging discrimination and hostile work environment because of his sexual orientation or perceived sexual orientation are dismissed.

### 2. *Race, Religion, Age Discrimination*
Plaintiff's claims of employment discrimination and hostile work environment on the basis of his race, religion, and age are also dismissed for failure to allege facts sufficient to state a plausible claim. Plaintiff alleges a litany of facts regarding his mistreatment by co-workers and supervisors at TSA in LaGuardia Airport. He states that although his work was above average in quality (Am.Compl.¶¶ 36-38), he was frequently reprimanded without justification by his supervisors and co-workers in the presence of others, including passengers (*id.* ¶¶ 27, 44-45, 47, 56, 59). Plaintiff describes specific instances where he was reprimanded without justification, but he does not allege any facts establishing that this mistreatment was prompted by animus towards him because of his race, religion,

or age. Disrespectful, harsh, and unfair treatment in the workplace alone does not state a claim for violation of federal employment law. *See Fridia v. Henderson,* No. 99 Civ. 10749(BSJ), 2000 WL 1772779, at \*6 (S.D.N.Y. Nov.30, 2000) ("not every unpleasant matter creates a cause of action"). To be actionable under Title VII or the Age Discrimination in Employment Act (the "ADEA"), abusive conduct in the workplace must have occurred at least in part because of plaintiff's membership in a protected class. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 76 (2d Cir.2001); *Brennan v. Metro. Opera Ass'n,* 192 F.3d 310, 318 (2d Cir.1999); *Ford v. New York City Dep't of Mental Health & Hygiene,* 545 F.Supp.2d 377, 393 (S.D.N.Y.2008). The statutes prohibit discrimination; they do not constitute civility codes. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

**\*3** The few facts alleged by plaintiff relating to his race or religion do not amount to more than stray remarks made by co-workers and cannot support a plausible claim of hostile work environment. *See Petrosino v. Bell Atl.,* 385 F.3d 210, 223 (2d Cir.2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."). For instance, plaintiff alleges that when he remarked that the Mel Gibson-directed movie *Passion of the Christ* was "the most anti-semitic [sic] movie ever made, one female screener ... said: 'Your Rabbi told you to say this!' " (Am.Compl.¶ 76). Plaintiff also states he heard "many comments to make him feel left out as one of the few non-Hispanic white persons." (*Id.* ¶ 80). Even interpreting these factual allegations "to raise the strongest arguments they suggest," *Graham v. Henderson,* 89 F.3d at 79, they do not state a plausible claim for a hostile work environment "permeated with discriminatory intimidation, ridicule, and insult ... that was sufficiently severe or pervasive to alter the conditions of ... employment" and create an abusive working environment. *Petrosino,* 385 F.3d at 223 (internal quotation marks and citations omitted).

Nor does plaintiff allege a plausible claim that he suffered adverse employment action because of his race, religion, or age. Instead of pleading facts regarding defendants' discriminatory animus, plaintiff merely makes conclusory statements attributing discriminatory intent to defendants' actions. For instance, plaintiff alleges:

[T]he very fact that Plaintiff was constantly screamed at by TSA employees for being too "thorough" must be the ultimate red flag that he was being discriminated

2008 WL 5191394

against. Is there any sphere of federal activity where quality work is penalized? If a staff physician at a Veterans' Administration hospital were too "thorough" during surgery and thereby had a zero mortality rate, would he then be penalized or rewarded? Would such a physician receive a recommendation letter? Plaintiff knows from his life experience that such good work would be rewarded. Such a physician would also have been given a very strong recommendation letter without even having to ask.

Therefore, Plaintiff was discouraged repeatedly from applying for the position for Lead Screener because of his race, religion, and sexual orientation....

(Am.Compl.¶¶ 38-39).

He also alleges:

No one cared to even listen to Plaintiff's point of view, which is the "reason d'etre" of this suit. The powers that be, [defendants] John Allen and John Ellison already made up their made [sic] before they even spoke to Plaintiff. Not once did they let him speak at length. They badgered and scolded Plaintiff for hours as if he were a terrorist in a poorly written "B" movie script.

This was the most extreme example of a constant and one-sided harassment of Plaintiff and intentional infliction of a hostile work environment, which was perpetrated by Defendants because of Plaintiff's race, religion and sexual orientation in violation of Title VII and the Fifth Amendment....

**\*4**  (*Id.* ¶¶ 69-70).

Without support, plaintiff concludes that defendants:

> [I]nflicted this hostile work environment upon Plaintiff in a deliberate attempt to induce him to resign his employment because they did not want an effeminate, gay, Jewish older white male working together with them in the same team.

(*Id.* ¶ 50). He also speculates he "is certain [defendant Annette Torres] would not have yelled at Plaintiff had he been either heterosexual or an African American as she was." (*Id.* ¶ 58).

In essence, plaintiff alleges that because he was yelled at, this must have been because he was "an effeminate, gay, Jewish older white male." Such conclusory and speculative statements are insufficient. While the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff, *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996), "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations" and are insufficient to state a claim for which relief may be granted. *Gavish v. Revlon, Inc.,* No. 00 Civ. 7291(SHS), 2004 WL 2210269, at \*10 (S.D.N.Y. Sept.30, 2004) (quoting *Citibank, N.A., v. Itochu Int'l Inc.,* No. 01 Civ. 6007(GBD), 2003 WL 1797847, at \*1 (S.D.N.Y. Apr.4, 2003)).

Accordingly, plaintiff's claims alleging violation of his rights under federal employment law are dismissed.

**B. *Bivens* Claim**

Plaintiff's *Bivens* claim for violations of his right to equal protection is dismissed because it is time-barred by the applicable statute of limitations. A three-year statute of limitations under New York C.P.L.R. § 214(5) applies to *Bivens* actions brought in federal district court in New York. *Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir.1987). Plaintiff worked as a screener for TSA at LaGuardia International Airport until July 27, 2004. (Am.Compl.¶ 19). The entirety of his *Bivens* claim arises from events that occurred while he was working at the airport.

Accordingly, to the extent that plaintiff's *Bivens* claim is distinct from his statutory employment discrimination claims, it is time-barred. [1] Even assuming any alleged constitutional violations were of a continuing nature that lasted until the date of his departure, plaintiff's *Bivens* claim is time-barred because he filed this action on August 19, 2008, more than four years after he stopped working at the airport.

[1]     To the extent plaintiff's *Bivens* claim concerns employment discrimination (including hostile work environment) at TSA, Title VII and the ADEA are his exclusive remedies and no *Bivens* cause of action may lie. *See Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (holding Title VII to be the "exclusive judicial remedy for claims of discrimination in federal employment"); *Briones v.*

*Runyon,* 101 F.3d 287, 289 (2d Cir.1996) ("Title VII is the exclusive remedy for discrimination by the federal government on the basis of race, religion, sex, or national origin."); *Bumpus v. Runyon,* No. 94 Civ. 2570(DC), 1997 WL 154053, at *4 (S.D.N.Y. April 2, 1997) ("ADEA provides the exclusive remedy for federal employees who allege age discrimination.").

**C. *Defamation***

Plaintiff's defamation claim against Allen is also dismissed as time-barred. Under New York law, an action to recover damages for defamation must be commenced within one year of the publication of the allegedly defamatory material. *See* N.Y. C.P.L.R. § 215(3); *Shamley v. ITT Corp.,* 869 F.2d 167, 172 (2d Cir.1989). When the plaintiff actually discovers the publication is not relevant. *See Memory's Garden, Inc. v. D'Amico,* 84 A.D.2d 892, 892, 445 N.Y.S.2d 45 (3d Dep't 1981); *Rand v. New York Times Co.,* 75 A.D.2d 417, 424, 430 N.Y.S.2d 271 (1st Dep't 1980). The cause of action accrues on the date of the utterance.

**\*5** Plaintiff alleges Allen lied in a written statement he made to a TSA investigator who was investigating plaintiff's employment discrimination claims. (Am.Compl.¶¶ 34-35). The statement was signed by Allen on November 2, 2005, and the report of investigation was submitted December 22, 2005. (*Id.* Ex. B at F-4). Accordingly, any claim plaintiff may have against Allen for making false factual statements is barred by the one-year statute of limitations.

### CONCLUSION

For the reasons set forth above, plaintiff's amended complaint is dismissed, with prejudice and without costs. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 5191394

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 38 of 49 PageID# 159

Thorne v. Shanahan, Not Reported in Fed. Supp. (2019)

2019 WL 3997440
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

Otis THORNE, Plaintiff,

v.

Patrick M. SHANAHAN, [1] Defendant.

| [1] | When this complaint was filed, James N. Mattis was the Secretary of Defense. When Patrick M. Shanahan became Secretary, he was substituted pursuant to Fed. R. Civ. P. 25(d). |

No. 18-cv-2170 (DLF)
|
Signed 08/23/2019

**Attorneys and Law Firms**

Otis Thorne, District Heights, MD, pro se.

**MEMORANDUM OPINION**

DABNEY L. FRIEDRICH, United States District Judge

**\*1** Otis Thorne, appearing *pro se*, sues the Department of Defense (DOD) for employment discrimination based on race and color. He also alleges retaliation for engaging in protected activity. Before the Court is the defendant's Motion to Dismiss the Amended Complaint or, in the Alternative, for Summary Judgment. *See* Dkt. 15. The defendant contends that Thorne failed to exhaust his administrative remedies prior to filing suit. For the reasons that follow, the Court will grant the defendant's motion.

**I. BACKGROUND**

**A. Factual Allegations**

Thorne "is an African American male with dark color skin" who worked as a nursing assistant for the DOD's Defense Health Agency (DHA) from October 12, 2004, to November 14, 2016. Am. Compl. ¶¶ 1, 6, 13, Dkt. 7. On March 30, 2015, Thorne filed an equal employment opportunity (EEO) charge with the DOD, "claiming discrimination on the basis of his race and color because the defendant's employees were harassing him on his job and because the defendant was taking disciplinary action against him." *Id.* ¶ 7. "Soon

after" the DHA received notice of the charge, it "began taking additional adverse actions against" Thorne, "including accusing him of using controlled substances that required him to take a drug test, and ... of engaging in other inappropriate behavior." *Id.* ¶ 8.

On September 13, 2015, Thorne was told that he was being investigated and was placed on administrative leave without pay. *Id.* ¶ 9. While on leave, Thorne filed a claim with the Merit Systems Protection Board (MSPB) "that included affirmative defenses of race and color discrimination and retaliation." *Id.* ¶ 11. The DHA "continued [Thorne's] leave without pay even though [he] attempted to report to work" after filing the claim with the MSPB. *Id.* ¶ 12.

Despite knowing the "plaintiff's whereabouts" and the reasons for his absence from work," the DOD "removed the plaintiff from federal service on or about November 14, 2016, allegedly because he was absent without leave." *Id.* ¶ 13. Thorne claims that he was not treated like "other nursing assistants who were white Caucasians subject to the same supervisory rules as the plaintiff who did not suffer the adverse actions as did the plaintiff." *Id.* ¶ 15.

**B. Procedural History**

*1. EEO Activity*

On March 30, 2015, Thorne filed a complaint with the DOD's Equal Opportunity and Diversity Management (EODM) office, alleging that DHA had discriminated against him based on his race and color and had subjected him to harassment in assigning duties and through discipline. Decl. of Martin Dietz ¶ 3, Dkt. 15-3 (Dietz Decl.). The office treated Thorne's contact as an "EEO pre-complaint" and assigned an EEO counselor. *Id.* In the section of the pre-complaint form captioned "Basis of Complaint," Thorne checked the boxes for race and color but not reprisal. *Id.*, Ex. 1. After the EEO counselor's "numerous attempts" to contact Thorne by telephone and email failed, DHA, by letter of April 23, 2015, issued a Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Exs. 2, 3. The agency has no record that Thorne "filed a formal EEO complaint in response" to that Notice. Dietz Decl. ¶ 6.

**\*2** In an email dated September 16, 2015, Thorne requested that his "EEO case ... file[d] in [M]arch 2015" be reopened. *Id.*, Ex. 4. On October 20, 2015, "the EEO counselor reached

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 39 of 49 PageID# 160

Thorne v. Shanahan, Not Reported in Fed. Supp. (2019)

Mr. Thorne by telephone, at which point Mr. Thorne informed the counselor that he wished to halt all conversation until he had an opportunity to consult with an attorney," which he expected to do "within approximately three days." *Id.* ¶ 8 (citing Exs. 4–5). After the counselor's "several" attempts to reach Thorne failed, DHA, by letter of November 2, 2015, issued a second Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Ex. 5. The agency has no record that Thorne "filed a formal EEO complaint in response" to that Notice. *Id.* ¶ 11. Nor does the agency have any record "that Mr. Thorne contacted EODM at any point after October 20, 2015." *Id.* ¶ 12.

### 2. *MSPB Activity*

Meanwhile, on February 9, 2015, Thorne filed an appeal with the MSPB, alleging harassment and discrimination. In an Initial Decision dated March 18, 2015, the Administrative Judge dismissed for lack of jurisdiction, concluding that Thorne "had not shown the agency's action amounted to a removal; a suspension exceeding 14 days; a reduction in grade; a reduction in pay; or a furlough of 30 days or less." Def.'s Ex. A at 2, Dkt. 15-4. Without "adverse actions appealable to the Board, ... the Board lack[ed] jurisdiction over [the] discrimination claims." *Id.*

On October 28, 2015, and November 13, 2017, respectively, Thorne filed with the MSPB an Individual Right of Action (IRA) appeal. The first appeal alleged "retaliation for whistleblowing activity and constructive suspension." Def.'s Ex. B, Dkt. 15-5. The Administrative Judge found that Thorne "failed to satisfy the exhaustion requirement in 5 U.S.C. § 1214(a)(3)" and alternatively "failed to make non-frivolous allegations that he made a protected disclosure under 5 U.S.C. § 2302(b)(8)." *Id.* at 5. The Administrative Judge thus denied the whistleblowing claim and concluded that "the Board does not have jurisdiction over the appellant's IRA appeal." *Id.* at 6.

Thorne's subsequent appeal, filed nearly one year after his removal, alleged retaliatory removal "for protected whistleblower activity." Def.'s Ex. C, Dkt. 15-6. The Administrative Judge concluded that Thorne "fail[ed] to meet his burden of establishing a nonfrivolous allegation that he engaged in protected activity" and dismissed the appeal for lack of jurisdiction. *Id.* at 5.

On February 5, 2018, Thorne filed a petition with the Equal Employment Opportunity Commission (EEOC) "requesting

review of the [latter] MSPB decision." Am. Compl. ¶ 4; *see* Def.'s Ex. D, Dkt. 15-7. In a March 15, 2018 opinion, the Commission denied review, reasoning:

> EEOC regulations provide that the Commission has jurisdiction over mixed-case appeals and complaints on which the MSPB has issued a decision that makes determinations on allegations of discrimination. Here, because the MSPB procedurally dismissed Petitioner's appeal for lack of IRA jurisdiction and did not make a determination on the merits o[f] any allegations of discrimination, the Commission has no jurisdiction to review Petitioner's appeal.

Def.'s Ex. D at 1–2 (citing 29 C.F.R. § 1614.303 *et seq.*). The Commission observed that Thorne "was given the right to file a petition for review with the full Board by February 16, 2018" but "[i]t appears that he did not do so." *Id.* at 1. The Commission further noted that "although whistle-blower retaliation is illegal, such claims are not within the purview of the statutes enforced by the Commission." *Id.* at 1 n.2. In contrast to Thorne's allegation, the Commission did not classify its opinion as "a final decision," Am. Compl. ¶ 4, nor did it issue a dismissal and right-to-sue notice.

### 3. *Court Proceedings*

In a different case, on April 16, 2018, Thorne filed his first complaint and a motion to proceed *in forma pauperis* (IFP) that was denied. *See Thorne v. Mattis*, No. 18-cv-886 (D.D.C. filed May 7, 2018), Dkt. 3. The court also denied Thorne's motion to reconsider the denial of IFP status but permitted time for him to either pay the $400 filing fee or submit a completed IFP application. Thorne did neither by the deadline, so Thorne's initial case was dismissed without prejudice and closed on September 7, 2018. *Id.*, Dkt. 6.

**\*3** In this action, filed on September 20, 2018, Thorne was granted IFP status and eventually permitted to file the operative Amended Complaint. Dkt. 3. Thorne alleges that he "received an adverse decision from the MSPB on all his claims," a "final decision from the EEOC," and "filed

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 40 of 49 PageID# 161

Thorne v. Shanahan, Not Reported in Fed. Supp. (2019)

a timely complaint," thereby exhausting "all administrative remedies[.]" Am. Compl. ¶¶ 4–5. He seeks, among other relief, a judgment that the DOD has violated his rights under Title VII of the Civil Rights Act of 1964, as amended; reinstatement of his position or front pay; lost back pay and benefits; and compensatory damages. *Id.* at 4.

## II. LEGAL STANDARD

The Court analyzes a motion to dismiss a Title VII claim for failure to exhaust administrative remedies under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 183 (D.D.C. 2018). When, as here, a court relies on matters outside the complaint and answer to resolve a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In responding to a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe," *id.* at 151, and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Liberty Lobby*, 477 U.S. at 255. Thus, summary judgment is appropriate "when a putatively disputed body of evidentiary material could not, even assuming a sympathetic factfinder, reasonably support a finding crucial to the nonmoving party's

legal position." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

## III. ANALYSIS

Thorne alleges discrimination under Title VII of the Civil Rights Act of 1964. Title VII proscribes discrimination against federal employees based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16. The D.C. Circuit has held that, while not explicitly stated, § 2000e-16 also prohibits the federal government from retaliating against its employees for exercising their rights under Title VII. *See Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006) (concluding that "Congress clearly has waived sovereign immunity from [Title VII] claims of retaliation").

Thorne, like all "Title VII complainants," must "timely exhaust [his] administrative remedies before bringing [his] claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (quotation marks and original alterations omitted); *see also* 42 U.S.C. § 2000e-16(c). This administrative exhaustion requirement is not jurisdictional but "may be 'mandatory' in the sense that a court must enforce [it] if a party 'properly raises' it," as the DOD has done here. *Fort Bend Cty., Texas*, 139 S. Ct. at 1849 (alteration omitted) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). It "serves the important purposes of giving the charged party notice of the claim[,] narrowing the issues for prompt adjudication and decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quotation marks and alteration omitted), and "ensur[ing] that the federal courts are burdened only when reasonably necessary," *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). As such, a Title VII complaint may "be barred for failure to exhaust administrative remedies" if the agency was unable "to take final action on the merits" of a discrimination complaint. *Wilson v. Pena*, 79 F.3d 154, 164 (D.C. Cir. 1996). And the complaint "is limited in scope to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Park*, 71 F.3d at 907.

**\*4** One administrative remedy for federal employees like Thorne is the option to pursue "a 'mixed case'—a case in which the asserted claim (or claims) both arises under a federal employment discrimination law (such as Title VII) and also relates to or stems from an action that is within the jurisdiction of the [MSPB]." *Niskey v. Kelly*, 859 F.3d 1, 6 (D.C. Cir. 2017), *cert. denied sub nom.*, *Niskey v. Duke*, 138 S. Ct. 427 (2017). The employee can thus either "forgo the internal agency exhaustion process and take his claim directly to the [MSPB]" or "file a mixed case complaint

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 41 of 49 PageID# 162

Thorne v. Shanahan, Not Reported in Fed. Supp. (2019)

with the agency and then appeal to the [MSPB] after the agency disposes of (or fails to timely act on) the mixed-case complaint." *Id.* at 7 (citations omitted). Thorne says that he took both routes by filing claims with the MSPB and the EEOC alike. Am. Compl. ¶ 2–5. He alleges that he received "an adverse decision from the MSPB on all his claims" and "a final decision from the EEOC" and thus exhausted his administrative remedies *Id.* ¶ 4. The DOD responds that Thorne "has submitted no evidence establishing that he filed an administrative complaint or obtained a ruling by the [MSPB] or the [EEOC]." Def.'s Reply 1.

The DOD is correct. No rational trier of fact could conclude that Thorne obtained a final ruling from the MSPB about the claims alleged here. Thorne filed his first MSPB appeal on February 9, 2015, alleging that the DOD improperly harassed and discriminated against him. *See* Def.'s Ex. A at 1. But this appeal predated all the adverse actions clearly alleged in Thorne's complaint, *see Greer v. Paulson*, 505 F.3d 1306, 1317–18 (D.C. Cir. 2007) (discussing "the test for adverse action"), which allegedly happened on September 13, 2015 and November 14, 2016. Am. Compl. ¶¶ 9, 13. In addition, this MSPB appeal did not result in a final ruling on the merits; the MSPB dismissed it for lack of jurisdiction because the allegations of discrimination and harassment "do not amount to adverse actions appealable to the Board" Def.'s Ex. A at 2. Thorne does not say otherwise. *See* Pl.'s Decl. ¶¶ 1–12, Dkt. 18. Thorne filed two appeals with the MSPB that postdated the adverse actions alleged here, but related to whistleblower retaliation claims—not the claims of discrimination or retaliation for filing employment grievances that compose the complaint here—and were also dismissed for lack of jurisdiction. *See* Def.'s Exs. B–C.

Nor could a rational trier of fact conclude that Thorne obtained a final ruling on the merits of these claims from the EEOC. Thorne filed a petition with the EEOC in early 2018, asking it to review the MSPB's third and latest "initial decision" of January 2018. *See* Def.'s Ex. C. But the EEOC declined to consider Thorne's petition for review for two reasons: Thorne had not petitioned the *full* MSPB for review, despite the MSPB notifying Thorne of this right to do so; and the MSPB had dismissed Thorne's appeal for lack of jurisdiction, meaning that the EEOC lacked jurisdiction to review the MSPB decision. *Id.*

Faced with the reality that neither the MSPB nor the EEOC reached the merits of the claims at issue here, Thorne asks the Court to excuse his failure to exhaust those remedies.

He explains that he "never received a letter from the [EEO] counselor notifying [him] of his right to file a formal complaint." Pl.'s Decl. ¶ 4. He thus argues that "any failures to exhaust [his] administrative remedies are the fault of the EEO counselor assigned to [his] case." *Id.* ¶ 11.

But the record forecloses Thorne's argument. It is undisputed that: Thorne confirmed his personal email address with the EEO counselor, Dietz Decl., Ex. 2; the counselor sent to that address two notices of Thorne's right to file a formal complaint, *id.* ¶¶ 6, 11; and Thorne used that email address to communicate with the EEO counselor *after* the EEO counselor sent the first notice to that address, *id.*, Ex. 4. In addition, after the EEO counselor sent (once again, to Thorne's personal email address) notice that it was closing the informal complaint process, Thorne asked the EEO counselor to "reopen" his case. *Id.* This shows that Thorne must have received notice that his first informal complaint was closed; he would have had no other reason to ask that the counselor reopen his case. *Id.* Though the Court may not cite the fact that Thorne's testimony is self-interested as reason alone to discount it, *see Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016), Thorne's testimony alone cannot create a fact issue when it is inconsistent with all other record evidence. On this record, no rational trier of fact could conclude that Thorne failed to receive notice of his right to file a formal complaint.

**\*5** What is more, even if Thorne did not receive such notice, his failure to exhaust his procedural remedies is not excused. Though it is unclear whether this doctrine extends beyond cases (unlike this one) that involve a statute of limitations defense, "an employee who missteps in the [administrative] process may avoid dismissal if he qualifies for equitable relief from the deadline by demonstrating good cause for the procedural failure." *Niskey*, 859 F.3d at 7 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). For example, "[a]n employee is entitled to equitable tolling if he demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.' " *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))).

Thorne has not shown good cause for a failure to exhaust. Thorne "satisfied his obligation to initiate contact with an EEO Counselor." *Id.* at 9. In a document dated April 30, 2015, captioned "Attempts to Reach Otis Christopher Thorne for Counseling," the EEO counselor recounts that on April 10, 2015, she and Thorne "talked and preliminarily

Case 1:22-cv-00434-PTG-JFA  Document 9-1  Filed 05/06/22  Page 42 of 49 PageID# 163

Thorne v. Shanahan, Not Reported in Fed. Supp. (2019)

scheduled interview for Friday, April 17. He confirmed his private email address. He works nights and is off Wednesday and Thursday. Dietz Decl., Ex. 2. But from then on, the record establishes that the agency made numerous attempts to contact Thorne that went largely unanswered. An EEO counselor left messages for Thorne on April 13, 14, 15, 16, and 23 of 2015. *Id.* The counselor also documented that on one occasion Thorne "could not be located or he was not at work (per unidentified person)" and on another "[h]e was with patients and could not take any calls." *Id.* On April 16, 2015, the counselor emailed Thorne, writing: "It is urgent that you respond to my telephone calls or to this email" and asked whether they were "meeting tomorrow, April 17th at 8 p.m. for [Thorne's] counseling session." *Id.* The counselor used Thorne's personal email address and a military email address. *See id.* Though the message to the military address was returned as undeliverable, the message to the personal address was not. *Id.* And that personal address matched the one that Thorne provided in the EEO Counselor's Report, *see id.*, Ex. 1, and from which Thorne sent his request on September 16, 2015 to reopen the pre-complaint process, *see id.*, Ex. 4.

After the EEO counselor's "numerous attempts" to contact Thorne by telephone and email failed, the DHA, by letter of April 23, 2015, issued a Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Ex. 3. The agency has no record that Thorne "filed a formal EEO complaint in response" to that Notice. *Id.* ¶ 6.

In an email dated September 16, 2015, Thorne requested that his "EEO case ... file[d] in [M]arch 2015" be reopened, which suggests that Thorne had received the April "right to file" notice. *Id.*, Ex. 4. On October 20, 2015, "the EEO counselor reached Mr. Thorne by telephone, at which point Mr. Thorne informed the counselor that he wished to halt all conversation until he had an opportunity to consult with an attorney," which he expected to do "within approximately three days." *Id.* ¶ 8 (citing Exs. 4–5). After the counselor's "several" attempts to reach Thorne again failed, DHA, by letter of November 2, 2015, issued a second Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Ex. 5. On November 3, 2015, the DHA sent these documents electronically to Thorne's personal email, explaining that it was "closing [Thorne's] information Counseling and issuing [him] a Notice of Right to File your Formal Complaint with the agency should you desire to continue your EEO claim." *Id.*, Ex. 4. The agency has no record that Thorne "filed a formal EEO complaint in response" to that Notice. *Id.* ¶

11. Nor does the agency have any record "that Mr. Thorne contacted EODM at any point after October 20, 2015." *Id.* ¶ 12.

**\*6**  In response, Thorne disputes that the EEO counselor assigned to his case in March 2015 "made numerous contact[s] with [him]." Pl.'s Decl. ¶ 4. He also states that he "never received" the letter in April 2015 "instructing me to file a formal complaint" or the letter in November 2015 "notifying me of my right to file a formal complaint." *Id.* ¶¶ 5, 10. Thorne acknowledges that he told the EEO counselor on October 20, 2015 that he wanted time to consult with an attorney, *id.* ¶ 7, and he does not dispute that he never contacted the EEO counselor after that, *id.* ¶ 8. He says only that the EEO counselor was supposed to contact him but never did. *Id.* ¶ 9.

But even so, this is not a case in which "the EEO counselor completely dropped the ball on processing [an] informal claim" and "ignored [the] obligation under the regulations ... to inform [Thorne] of his rights in the process." *Niskey*, 859 F.3d at 9. There is no genuine dispute that the agency sent notices to both the electronic and physical addresses that Thorne supplied and, in the case of his personal email address, still used. *See* Dietz Decl. ¶¶ 6, 11. Nor is there a genuine dispute that the agency reopened Thorne's claim, at his request, after sending the first notice. In addition, no "extraordinary circumstance" stood in Thorne's way. *Id.* at 7 (citation omitted). The record supports that Thorne received the two notices of his right to file, and even if he had not, his multiple filings before the MSPB and the EEOC show that he knew about the mixed-claim process but nonetheless failed to exhaust that remedy. And the counselor's failure to call Thorne back—even if true—did not excuse Thorne's missteps either. Thorne admits that he never called the counselor back but offers no reason why. Pl.'s Decl. ¶ 8. This failure shows that Thorne was not "pursuing his rights diligently." *Niskey*, 859 F.3d at 7 (citation omitted).

### CONCLUSION

For these reasons, the Court grants the defendant's motion for summary judgment. A separate order accompanies this memorandum opinion.

### All Citations

Not Reported in Fed. Supp., 2019 WL 3997440

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Wright v. Locke, Not Reported in Fed. Supp. (2010)

2010 WL 11561698

2010 WL 11561698
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Norman M. WRIGHT, Plaintiff,

v.

Gary LOCKE, Secretary, U.S. Department of
Commerce, and David Kappos, Under Secretary of
Commerce for Intellectual Property and Director of
the U.S. Patent and Trademark Office, Defendants.

Case No. 1:09–cv–379 (GBL)
|
Signed 01/12/2010

**Attorneys and Law Firms**

Norman M. Wright, Centreville, VA, pro se.

Leslie Bonner McClendon, Kevin J. Mikolashek, United
States Attorney's Office, Alexandria, VA, for Defendants.

### MEMORANDUM ORDER

Gerald Bruce Lee, United States District Judge

**\*1** THIS MATTER is before the Court on:

   1. Defendants' Motion to Dismiss (Dkt. No. 7);

   2. Defendants' Motion to Strike (Dkt. No. 23);

   3. Defendants' Motion for Leave to File a Reply (Dkt. No. 30);

   4. Defendants' Motion to Strike the Amended Complaint (Dkt. No. 31);

   5. Defendants' Motion to Withdraw and Substitute Exhibit (Dkt. No. 32);

   6. Plaintiff's Motion for Brief Extension of Time to File a Reply (Dkt. No. 36); and

   7. Plaintiff's Motion to Stay Discovery (Dkt. No. 39).

This case concerns *pro se* Plaintiff Norman Wright's race and
disability discrimination, retaliation, failure to accommodate,
and Family Medical Leave Act claims stemming from the
USPTO's denial of an accommodation for his depression and
ultimate termination of his employment. The Court grants
Defendants' Motion for Leave to File a Reply and therefore
denies as moot Plaintiff's Motion for Brief Extension of Time
to File a Reply. [1] The Court also grants Defendants' Motion to
Withdraw and Substitute Exhibit. The Court denies as moot
Plaintiff's Motion to Stay Discovery.

[1]    Plaintiff's Motion entitled "Motion for Brief
Extension of Time to File a Reply" is actually
a motion for an extension of time to file an
opposition to "Defendants' Motion for Leave to
file a Reply." The Court finds that Defendants'
Motion for Leave to file a Reply is properly granted
because Plaintiff untimely filed his Opposition to
Defendants' Motion to Dismiss, thus depriving
Defendants of their right to file a Reply pursuant to
the Local Rules. *See* E.D. Va. Loc. Civ. R. 7(F)(1).

Four issues remain before the Court. The first issue is whether
Plaintiff timely filed his Opposition to Defendants' Motion to
Dismiss where Defendants filed their Motion on October 1,
2009, and Plaintiff filed his Opposition on December 2, 2009.
The second issue is whether Plaintiff properly and timely
amended his Complaint without leave from the Court where
he filed the Amended Complaint after the revised Federal
Rule of Civil Procedure 15(a) took effect. The third issue is
whether the Family and Medical Leave Act, 29 U.S.C. § 2601,
*et seq.* ("FMLA"), affords Plaintiff a private right of action
as a former federal employee. The fourth issue is whether
Plaintiff properly pleads exhaustion of his administrative
remedies as to his race discrimination and retaliation claims
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
000e, *et seq.* ("Title VII"), where he elected to proceed via
arbitration, but pleads no facts showing that race or retaliation
were raised during the arbitration proceedings or before the
subsequent Merit Systems Protection Board ("MSPB").

First, the Court grants Defendants' Motion to Strike Plaintiff's
Opposition because Plaintiff filed his Opposition forty-
two days late and failed to establish excusable neglect as
to why his brief was untimely filed. Second, the Court
denies Defendants' Motion to Strike the Amended Complaint
because Plaintiff properly filed the Amended Complaint
pursuant to the previous version of Rule 15(a). Third, turning
to the Amended Complaint, the Court grants Defendants'
Motion to Dismiss Plaintiff's FMLA claims because the
FMLA does not afford Plaintiff a private right of action and
Plaintiff fails to allege that he properly raised his FMLA

Wright v. Locke, Not Reported in Fed. Supp. (2010)

2010 WL 11561698

claims before the MSPB. Fourth, the Court grants Defendants' Motion to Dismiss Plaintiff's Title VII race discrimination and retaliation claims because Plaintiff fails to plead that he exhausted his administrative remedies. The Court first addresses Defendants' Motion to Strike Plaintiff's Opposition, followed by Defendants' Motion to Strike the Amended Complaint, then finally Defendants' Motion to Dismiss.

## I. Motion to Strike Plaintiff's Opposition

 **\*2**  As an initial matter, the Court grants Defendants' Motion to Dismiss because Plaintiff's Opposition was untimely filed and Plaintiff fails to establish excusable neglect. A *pro se* plaintiff must respond to a motion to dismiss within twenty days of the date on which the motion is filed. *See* E.D. Va. Loc. Civ. R. 7(K)(1). The filing of an opposition brief by a *pro se* party is an act required to be done "within a specified amount of time." *See* FED. R. CIV. P. 6(b). Where a deadline has already passed, Rule 6(b)(2) prevents a court from extending the filing deadline unless the party establishes that its failure to timely file was the result of excusable neglect. *See* FED. R. CIV. P. 6(b)(2).

Excusable neglect is an equitable concept, and courts will consider "the relevant circumstances surrounding the party's omission" to determine whether an extension was warranted under Rule 6(b)(2). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). However, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." *Id.* at 392.

Here, Defendants filed their Motion to Dismiss on October 1, 2009. (Dkt. No. 7.) Also on October 1, 2009, Defendants sent Plaintiff the required *Roseboro* Notice, which informed Plaintiff that he was "entitled to file a response opposing the Defendants' Motion to dismiss and that any such response must be filed with[in] twenty (20) days of today's date, unless ordered otherwise by the Court." (Dkt. No. 9.) Hence, Plaintiff's Opposition was due on October 21, 2009. At the initial pretrial conference on October 21, 2009, Defendants' counsel reminded Plaintiff that his Opposition was due on that day. Despite receiving notice of the deadline and being reminded by Defendants' counsel, Plaintiff did not file his Opposition until December 2, 2009, forty-two days after it was due.

Plaintiff argues that his Opposition was timely because the magistrate judge's November 2, 2009, Order requires the parties to file responses to motions by 5 p.m. the Wednesday before the Friday for which the hearing on the motion is noticed. Plaintiff argues that, because the Motion to Dismiss hearing was scheduled for December 4, 2009, his Opposition was not due until December 2, 2009, the date on which he filed. The Court rejects Plaintiff's argument because the magistrate judge's Rule 16(b) Scheduling Order directs that responses to *non-dispositive* motions be filed by the Wednesday prior to the Friday hearing. (Sched. Order. 2.) Defendants' Motion to Dismiss, however, is a dispositive motion. As such, the Local Rules required Plaintiff to file his Opposition within twenty days. *See* E.D. Va. Loc. Civ. R. 7(K). Plaintiff does not argue that he failed to receive the required *Roseboro* Notice nor does he contest Defendants' statement that defense counsel reminded him of the filing deadline at the initial pretrial conference. Plaintiff's misunderstanding of the term "non-dispositive" does not constitute excusable neglect given the ample notice he received as to the filing deadline. Furthermore, Plaintiff fails to raise any additional arguments that might otherwise establish excusable neglect. Accordingly, the Court grants Defendants' Motion to Strike Plaintiff's Opposition to the Motion to Dismiss.

## II. Motion to Strike the Amended Complaint

The Court denies Defendants' Motion to Strike the Amended Complaint as untimely under Federal Rule of Civil Procedure 15(a) because the Court applies the previous version of the Rule in considering Plaintiff's amendment, not the current version of Rule 15(a). Prior to the revisions, Federal Rule of Civil Procedure 15(a) allowed a party to amend its complaint "once as a matter of course at any time before a responsive pleading is served ..." FED. R. CIV. P. 15(a) (amended Dec. 1, 2009). After the revisions, Rule 15(a) now provides

> **\*3**  A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1).

2010 WL 11561698

Here, Plaintiff filed his Amended Complaint on December 2, 2009, and the Clerk entered the Amended Complaint on December 3, 2009. Under the old Rule 15(a), Plaintiff's amendment without leave from the Court would be proper because Defendants have yet to file a responsive pleading. However, under the revised Rule 15(a) it would be untimely because Plaintiff filed the Amended Complaint more than twenty-one days after Defendants filed their Rule 12(b) motion.

Defendants argue that the Court should apply the revised Rule 15(a) because Plaintiff filed his Amended Complaint after the revisions took effect. The Court rejects this argument because Defendants' approach would create an unjust result. The Supreme Court's Order of March 26, 2009, per the Rules Enabling Act, provides:

> That the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2009, and shall govern in all proceedings thereafter commenced and, *insofar as just and practicable*, all proceedings then pending.

Federal Civil Judicial Procedure and Rules, 2009 Revised Edition (West), Order of March 26, 2009, P. 41 (emphasis added). Here, it would be unjust to apply the revised Rule 15(a) because, in doing so, Plaintiff's deadline for amending without leave would have occurred *before* the revised Rule 15(a) even took effect. Under Defendants' argument, Plaintiff would have been permitted to file the Amended Complaint without leave on November 30, 2009, while the old Rule 15(a) was in effect, but on December 2, 2009, he would have missed the mark by over forty days. Hence, adopting Defendants' argument, the only way that Plaintiff could have amended without leave is if he had researched the revisions and treated them as binding over a month before their effective date. It would be unjust to place such a demand on a party, especially a *pro se* plaintiff. Consequently, the Court denies Defendants' Motion because Plaintiff's Amended Complaint is properly filed under the previous version of Rule 15(a).

III. Motion to Dismiss

Turning now to Defendants' Motion to Dismiss, the Court finds that three of Defendants' dismissal arguments made as to the Complaint apply equally to some of the claims alleged in the Amended Complaint. Rather than have the parties rebrief these arguments, the Court will consider them reasserted as to the Amended Complaint.[2] The Court grants Defendants' Motion to Dismiss as to Plaintiff's FMLA claims because the FMLA does not provide Plaintiff a private right of action and Plaintiff fails to allege that he properly raised his FMLA claims before the MSPB. The Court grants Defendants' Motion to Dismiss as to Plaintiff's Title VII race discrimination and retaliation claims because Plaintiff elected to proceed via arbitration and fails to plead facts showing that he exhausted his administrative remedies as to those claims. The Court addresses these claims in order below.

2      Courts are required to construe and administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. The Court finds it unnecessary to have the parties rebrief arguments previously raised as to the Complaint that are equally relevant to claims asserted in the Amended Complaint.

*A. Standard of Review*

**\*4** A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* FED. R. CIV. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted). Courts will disregard "unwarranted inferences, unreasonable conclusions, [and] arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009); *see also Iqbal*, 129 S.Ct. at 1951–52.

In order to survive a Rule 12(b)(6) motion to dismiss a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 47 of 49 PageID# 168

Wright v. Locke, Not Reported in Fed. Supp. (2010)
2010 WL 11561698

is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the Plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

*B. FMLA Claims*

The Court grants Defendants' Motion to Dismiss Plaintiff's FMLA claims because the FMLA does not afford Plaintiff a private right of action and because Plaintiff fails to allege that he properly raised his FMLA claims before the MSPB.

The Family and Medical Leave Act contains two titles, each of which applies to different types of employees and provides different enforcement rights. Title I generally governs leave for private employees and certain federal employees, to include postal service employees and employees employed on temporary or intermittent bases. 5 U.S.C. §§ 2105(e), 6381(1)(A), respectively. Title I employees are entitled to up to twelve weeks per year of unpaid leave if they provide their employers with adequate notice and obtain medical certification of the need to take time off for a qualifying personal or family medical condition. 29 U.S.C. §§ 2612(a), 2613. Section 107 of Title I permits an employee to bring a civil action against an employer in federal or state court. § 2617(a)(2). Section 107 also provides that employers who violate the FMLA will be liable to the aggrieved employees for monetary damages and equitable relief. § 2617.

Title II generally applies to any federal employee who has worked more than twelve months in federal service who is not a postal employee. 5 U.S.C. §§ 6381–6387. Title II guarantees the same substantive rights to non–Title 1 federal employees. *Id.* Title II, however, substantially differs from Title I as to

an employee's ability to enforce his rights. Title II does not contain an enforcement provision analogous to Section 107 of Title I. "No unequivocal waiver of immunity exists in Title II, and, consequently, the omission of a provision in Title II similar to that in Title I creating a private right of action is treated as an affirmative congressional decision that the employees covered by Title II of the FMLA should not have a right to judicial review of their claims through the FMLA." *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997). As such, a Title II employee has no direct right of action to pursue his claim in federal district court. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 800 (D. Md. 2005).

**\*5** Although FMLA Title II employees do not have a direct right of action, they have other avenues available to challenge FMLA violations. A Title II federal employee may file a grievance provided by union agreement or internal grievance procedures. *See Mann*, 120 F.3d at 38; *Davis*, 367 F. Supp. 2d at 800. He may also file an administrative claim with the Office of Personnel Management. 31 U.S.C. § 3702(a)(2). Additionally, FMLA claims may be brought before the MSPB as part of an otherwise appealable action if the appealable action is leave related, and later appealed to the Federal Circuit. *See Davis*, 367 F. Supp. 2d at 800.

Plaintiff, a former full-time employee of the USPTO, is covered under Title II of the FMLA. (Am. Compl. ¶ 1.) As such, the FMLA does not afford Plaintiff a private right of action. Plaintiff alleges that his claim is properly before this Court because he first appealed to the MSPB. (Am. Compl. ¶ 9). However, the Court takes judicial notice of the MSPB's conclusion that Plaintiff failed to properly raise his FMLA claim before the Board. *See Wright v. Dep't of Commerce*, 110 M.S.P.R. 349, 353 (Dec. 23, 2008) ("[Appellant] stated, in general terms, the grounds on which the review is requested.... However, he has not provided references to evidence of record or rulings related to the issues before the Board. Nor has he provided arguments in support of his stated grounds.... In effect, the appellant is requesting a *de novo* review of the arbitrator's decision, which is beyond the scope of the Board's role in this matter."). As such, the Court dismisses Plaintiff's FMLA claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

*C. ace Discrimination and Retaliation Claims*

The Court grants Defendants' Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Plaintiff's Title VII race discrimination and retaliation claims because Plaintiff elected to proceed via arbitration and fails to plead facts showing that

Case 1:22-cv-00434-PTG-JFA   Document 9-1   Filed 05/06/22   Page 48 of 49 PageID# 169
Wright v. Locke, Not Reported in Fed. Supp. (2010)
2010 WL 11561698

he exhausted his administrative remedies. A plaintiff must exhaust his administrative remedies before filing a Title VII lawsuit. *See Brown v. General Services Administration*, 425 U.S. 820, 832 (1976); *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The exhaustion requirement serves to ensure that the employer is on notice as to the alleged violations and to afford the employer an opportunity to resolve the matter without resort to litigation. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

Where a plaintiff elects to proceed initially through grievance and arbitration instead of filing an Equal Employment Opportunity ("EEO") Complaint, the plaintiff is bound by that decision and must exhaust his administrative remedies accordingly. *See American Postal Workers Union, AFL–CIO v. United States Postal Service*, 755 F. Supp. 1076, 1079 (D.D.C. 1989).

> When a person is employed by an agency subject to 5 U.S.C. § 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on the matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both.

29 C.F.R. § 1614.301(a).

Here, Plaintiff elected the negotiated grievance procedure and therefore must plead facts showing that he exhausted his remedies through that administrative channel. Although Plaintiff filed an EEO Complaint on January 21, 2007, the Union submitted his Notice of Intent to Arbitrate on January 3, 2007. (Gov't Supp. Ex. 1.)[3] Thus, Plaintiff must plead facts showing that he raised race discrimination and retaliation during the arbitration and subsequent proceedings. Plaintiff fails to do so. Plaintiff argues that he raised race and retaliation in his EEO Complaint, but he filed that *after* he elected to arbitrate and therefore the EEO Complaint is irrelevant on the issue of exhaustion. The Court takes judicial notice of the arbitrator's decision, which shows that the arbitrator addressed the issues raised by the Union—failure

to accommodate, disability discrimination, and removal based on improper evaluation periods—but did not address race or retaliation. *USPTO v. Patent Office Prof'l Ass'n*, FMCS Case No. 07–01610 (June 9, 2008) (Foster, Arb.). Furthermore, the MSPB decision indicates that Plaintiff failed to identify specific errors in the arbitrator's decision, but instead simply refiled the closing brief from the arbitration proceedings. *Wright*, 110 M.S.P.R. at 353. Again, neither race nor retaliation were raised by Plaintiff or addressed by the MSPB. Finally, in seeking EEOC review of the MSPB decision, Plaintiff again raised disability discrimination but not race discrimination or retaliation. The Court provided Plaintiff an opportunity to show that he raised these claims during the arbitration and MSPB proceedings; he has failed to do so. Plaintiff fails to plead exhaustion as to his race and retaliation claims. Consequently, the Court dismisses both claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

3        During the December 4, 2009, hearing, the Court directed the parties to file supplemental documentation from the arbitration and subsequent proceedings going to the issue of whether Plaintiff previously raised Title VII race and discrimination claims. In considering a motion to dismiss, a court can take judicial notice of documents in the public record. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (quoting *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)).

*D. Remaining Claims*

**\*6**  The Court reserves judgment as to Plaintiff's Rehabilitation Act claims (Counts 3–5) and Civil Service Reform Act claim (Count 8) because these claims were not asserted in the original Complaint and the parties have not had an opportunity to brief their potential arguments. If Defendants wish to move for dismissal of these claims, they must file a supplemental brief as to why dismissal of these claims is proper within twenty (20) days of the date of this Order.

## IV. Conclusion

The Court grants Defendants' Motion to Strike because Plaintiff untimely filed his Opposition and failed to establish excusable neglect. The Court denies Defendants' Motion to Strike the Amended Complaint because the Court finds the Amended Complaint properly filed under the previous version of Federal Rule of Civil Procedure 15(a). Turning to the Amended Complaint, the Court grants Defendants'

2010 WL 11561698

Motion to Dismiss Plaintiff's FMLA claims because Plaintiff has no FMLA private right of action and Plaintiff fails to allege that he properly raised his FMLA claim before the MSPB. The Court grants Defendants' Motion to Dismiss Plaintiff's Title VII race discrimination and retaliation claims because Plaintiff fails to plead exhaustion of his administrative remedies. Therefore, it is hereby

ORDERED that Defendants' Motion for Leave to File a Reply (Dkt. No. 30) is GRANTED. It is further

ORDERED that Defendants' Motion to Strike the Amended Complaint (Dkt. No. 31) is DENIED. It is further

ORDERED that Defendants' Motion to Withdraw and Substitute Exhibit (Dkt. No. 32) is GRANTED. The Clerk is directed to remove Supplemental Exhibit No. 2 from Defendants' Notice of Filing of Supplemental Exhibits (Dkt. No. 25) and substitute that exhibit with the redacted Supplemental Exhibit No. 2, which is attached to Defendants' Motion to Withdraw and Substitute Exhibit (Dkt. No. 32). It is further

ORDERED that Defendants' Motion to Strike (Dkt. No. 23) is GRANTED. Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. No. 22) be and is STRICKEN. It is further

ORDERED Defendants' Motion to Dismiss (Dkt. No. 7) is GRANTED in PART. The Court dismisses Plaintiff's FMLA claims with prejudice (Counts 1 & 2). The Court dismisses Plaintiff's Title VII race discrimination and retaliation claims with prejudice (Counts 6 & 6). The Court reserves judgment as to Plaintiff's Rehabilitation Act claims (Counts 3–5) and Civil Service Reform Act claim (Count 8). If Defendants seek dismissal of these claims, they are directed to file a brief within twenty (20) days of the date of this Order setting forth their arguments for dismissal. It is further

ORDERED that Plaintiff's Motion for Brief Extension of Time to File a Reply (Dkt. No. 36) is DENIED as MOOT. It is further

ORDERED that Plaintiff's Motion to Stay Discovery (Dkt. No. 39) is DENIED as MOOT.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11561698

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.